## GREENLEAF *v.* GOODRICH.

1. In 1862 and 1863, A. imported into the port of Boston certain goods upon which the collector imposed, and A. under protest paid, a duty of thirty per cent *ad valorem* under the mixed-material clause of the act of March 2, 1861 (12 Stat. 192), and of two cents per square yard under the ninth section of the act of July 14, 1862. Id. 553. A., claiming that under the act of 1862 the goods were subject only to an *ad valorem* duty of thirty per cent, brought suit to recover the difference. It appeared in evidence that the goods were known in trade and were bought and sold as poil de chevres, reps, plaids, lustres, Saxony dress-goods; that they were always woven in colors, the yarns being dyed or colored before weaving; that they never existed in the gray or uncolored condition, but were made as delaines are made, with a cotton warp and a worsted weft, the difference between them and delaines being that the latter are a fabric of all-wool, or cotton warp and worsted weft, made of yarns not dyed, the cloth being printed or dyed in the piece; that as early as 1857 both the all-wool delaines and those with cotton warp and wool or worsted filling were known in trade by names changing from time to time, to suit the fancy of importers and purchasers. It also appeared that in several other particulars A.'s goods differed from delaines. The court charged the jury that, in addition to the duty of thirty per cent *ad valorem* imposed by the act of 1861, the act of 1862 "imposed a specific duty on all delaines, whether colored or uncolored, and all goods of similar description to delaines, whether colored or uncolored, if such delaines or goods of similar description do not exceed in value forty cents a square yard," and that it was for them to determine whether A.'s goods were "similar in description to these delaines, whether they are colored or uncolored." *Held,* that the instruction was proper.

2. The changes of classification and phraseology made in the act of 1862 show an intention to take out of the mixed-material clause of the act of 1861 (which was limited to manufactures not otherwise provided for) some descriptions of goods which the act placed there, and, by transferring them to another class, subject them to the additional duty prescribed for that class.

3. The phrase "of similar description" is not a commercial term, and the tariff acts do not contemplate that goods classed under it shall be in all respects the same.

ERROR to the Circuit Court of the United States for the District of Massachusetts.

The facts are stated in the opinion of the court.

*Mr. Charles Levi Woodbury* for the plaintiff in error.
*Mr. Assistant Attorney-General Smith, contra.*

MR. JUSTICE STRONG delivered the opinion of the court.

That the goods imported by the plaintiffs were subject to a

duty of thirty per cent under the act of March 2, 1861, is not denied. They belonged to the class described in that act as " manufactures, not otherwise provided for, composed of mixed materials, in part of cotton, silk, wool or worsted, or flax." The controversy between the parties now is over the question what was added to that duty by the act of July 14, 1862.

By the third item of sect. 13 of the act of 1861 a duty of twenty-five per cent *ad valorem* was imposed upon " all delaines, cashmere delaines, muslin delaines, barege delaines, composed wholly or in part of wool, gray or uncolored, and on all other gray or uncolored goods of similar description ; " " on bunting and on all stained, colored, or printed, and on all other manufactures of wool, or of which wool shall be a component material, not otherwise provided for, a duty of thirty per cent *ad valorem.*"

By sect. 22 of the same act a duty of thirty per cent was levied in the mixed-material clause quoted above. A subsequent act, passed on the 5th of August, 1861, amended the third item of sect. 13 of the act of March 2, 1861, by striking from it the word " wool " wherever it occurred, and inserting the word " worsted " in lieu thereof.

Thus stood the law when the act of 1862 was enacted. It was an act to increase the duties leviable under the act of 1861. The ninth section enacted that in addition to the duties theretofore imposed there should be levied, collected, and paid " on all delaines, cashmere delaines, muslin delaines, barege delaines, composed wholly or in part of worsted, wool, mohair, or goat's hair, and on all goods of similar description, not exceeding in value forty cents per square yard, two cents per square yard.

" On bunting, worsted yarns, and on all other manufactures of worsted, or of which worsted shall be a component material, *not otherwise provided for*, five per cent *ad valorem.*"

A subsequent section of the act imposed an additional duty of five per cent *ad valorem* also on manufactures, *not otherwise provided for*, composed of mixed materials, in part of cotton, silk, wool or worsted, hemp, jute, or flax.

An examination of these provisions will reveal very plainly that the classification of the articles made subject to an in-

creased duty is not the same as it was in the act of 1861. The first clause of the third item of sect. 13 of the act of 1861, as amended in August, embraced only delaines composed wholly or in part of worsted, and goods of similar description, woven in the gray, or uncolored. The act of 1862 grouped with them delaines made wholly or in part of wool, mohair, or goat's hair, and also delaines composed wholly or in part of worsted, and goods of similar description, not in the gray or uncolored. It was, therefore, much more comprehensive than the former act. So the second clause of the third item of the thirteenth section of the act of 1861 differs much from the corresponding clause of the act of 1862.

Similar changes of classification appear when the mixed-material clauses of the two acts are compared. The changes were evidently not without a purpose.

Such were the statutory provisions when the plaintiffs' importations were made. The collector exacted duties at the rate of thirty per cent *ad valorem*, and two cents per square yard, claiming that the goods were goods of similar description to the delaines mentioned in the ninth section of the act of 1862, and did not exceed in value forty cents per square yard. On the other hand, the plaintiffs claimed that the goods, having been classed under the act of 1861, among manufactures of mixed materials, not otherwise provided for, and subjected to a duty of thirty per cent, continued in that class under the act of 1862, and were, therefore, chargeable only with a duty of thirty-five per cent. Accordingly, having paid the duty, exacted by the collector, under protest, they have brought this suit to recover the difference between thirty-five per cent *ad valorem*, and thirty per cent and two cents per square yard.

It appeared in evidence that the goods were known in trade and were bought and sold as poil de chevres, reps, plaids, lustres, Saxony dress-goods. They were always woven in colors, the yarns being dyed or colored before weaving. They never existed in the gray or uncolored condition. But they were made, as delaines are made, with a cotton warp and a worsted weft, the difference between them and delaines (as stated in the plaintiffs' protest) being that delaines are a fabric of all-wool, or cotton warp and worsted weft, and made of yarns not

dyed, the cloth being printed or dyed in the piece. It further appeared that as early as 1857 both the all-wool delaines and those with cotton warp and wool or worsted filling were known in trade by names changed from time to time, to suit the fancy of importers and purchasers. It also appeared that in several other particulars the goods of the plaintiffs differed from delaines. To these differences it is unnecessary now to refer in detail.

Now, conceding, as we may, that the plaintiffs' goods came under the mixed-material clause of the act of 1861, being excluded from the delaine clause, that embraced only goods woven in the gray, it is not perceived how that can throw any light upon the proper construction of the act of 1862, which obviously intended a different classification. Undoubtedly, acts of Congress *in pari materia* are to be construed with reference to each other. And it may be admitted that when, in a later act, Congress uses expressions that had a recognized meaning in a former act relating to the same subject, they intended to use them in the same sense in which they were first used, that is, with their recognized meaning. But this rule has no bearing upon a case like the present. This is not a question respecting the meaning of terms. We cannot see, therefore, that the Circuit Court erred in refusing to affirm the plaintiffs' first four points, and in declining to rule under what clause of the act of 1861 the imported goods fell. After all, the question for that court was the construction of the act of 1862, and the construction given was, we think, correct. It could not have been different if the court had undertaken to construe with it the clauses of the act of 1861. As we have said, the changes of classification and of phraseology made in the act of 1862 show an intention to take out of the mixed-material clause of the former act (which was limited to manufactures not otherwise provided for) some descriptions of goods which the act placed there, and by transferring them to another class, subject them to the additional duty prescribed for that class. If not so, what was the necessity for a reclassification? Why change the language? It would have been sufficient to declare what additional duty should be paid by each class as formerly arranged. The act of 1861, therefore,

could furnish no aid to the construction of the act of 1862, and reference to it was unimportant, except for the purpose of discovering the percentage of duties it imposed.

The fifth point was properly refused. The words " of similar description " in the delaine clause of the act of 1862 cannot be affirmed to have referred only to such goods as have the greater number of characteristics in common with delaines. Some common characteristics are of much more importance than others in determining resemblances.

The sixth point propounded was as follows : " Revenue laws designate and class substances according to the general usage and known denominations of trade. The words ' all goods of similar description ' in the Tariff Act of 1862 refer to a similarity for revenue purposes with goods previously enumerated, and this is determined by what was then known and classed among merchants as similar goods ; and if being woven in the gray or natural color of the worsted and other materials of which they are composed is found to have been an important and pervading characteristic commonly distinguishing goods known among merchants as of similar description with delaines, then the goods on which the duties in this case were assessed were not of similar description with delaines, unless the jury find they were so woven in the gray or natural color, and unless these goods possessed all the pervading characteristics which in 1862 were commonly understood among merchants as distinguishing goods known in commerce as of a similar description with delaines, from all other goods, the plaintiffs are entitled to a verdict." This point the court declined to affirm, and we think rightly, for several reasons.

There was no evidence, so far as it appears, to justify its presentation. The record exhibits nothing tending to show what was commonly understood among merchants as distinguishing goods, known in commerce as of a similar description with delaines, from all other goods. Nor was there any evidence that there were any goods known by merchants, or in commerce, as goods of a similar description with delaines, much less was it in proof that being woven in the gray was regarded by merchants as determining that goods so woven were not of similar description with delaines. In regard to all these matters the record is

silent.   Composed, as the goods were, of the same materials as delaines, having a similar general appearance, and intended for the same uses, they might well have been of similar description with colored delaines, though there were differences in the process of manufacture.

The statute does not contemplate that goods classed under the words " of similar description " shall be in all respects the same.   If it did, these words would be unnecessary.   They were intended to embrace goods like, but not identical with, delaines.

The court charged the jury, in answer to a prayer of the defendant, that the similarity referred to in the expression " 'goods of similar description,' in the act of 1862, is a similarity in respect to the product, and its adaptation to uses, and to its uses, and not merely to the process by which it was produced, and that if a class of goods were not in 1862 commercially known as delaines, it does not follow that they were not goods of similar description, within the meaning of the statute."   And again : " These words are to be taken and understood in their popular and received import, as generally understood in the community at large at the time of the passage of the act."   Other similar instruction was given, and the court called attention to all the alleged dissimilarities urged by the plaintiffs, including the fact that delaines are woven in the gray, and that the plaintiffs' goods were not, and summed up as follows : —

" If you find that the product or result is an article for ladies' dresses made with a cotton warp and worsted filling, the question for your determination is, whether the two kinds of goods are substantially the same and alike.   The process of manufacture, the worsted in the goods of the plaintiffs being dyed previous to weaving, is an element to be considered by the jury in coming to their conclusion, but not alone and distinct from all others which may have been established.   It is for the jury to determine, from all the evidence in the case, whether, by the colored filling made and woven in the way and manner described with a cotton warp, the product is or not an article substantially similar and like the delaine fabrics, whether or not, while varying more or less in some particulars from delaines, the goods were or not substantially the same or substantially differ-

ent from them.   If substantially the same article, then the duties were properly assessed; but if they were substantially different, and the plaintiffs' goods were not of a similar description to the delaine fabrics, then they were not subjected to the additional duty."

Notwithstanding the strenuous objections urged against such a submission to the jury, we think it was correct. At least it was quite as favorable to the plaintiffs as they had a right to demand.   Reliance is placed upon the rule, which we admit to be established, that the commercial designation of an article among traders and importers, where such designation is clearly established, fixes its character for the purpose of the tariff laws. But the present is not a case of commercial designation of articles.   The phrase " of similar description " is not a commercial term, and if it were, there is no evidence in the record to show what it is understood to mean among merchants and importers. In *Maillard* v. *Lawrence* (16 How. 251) we have an instructive case bearing upon this subject.   There the question was whether shawls came under one schedule of the act of 1846, imposing a duty of twenty-five per cent, or under another charged with a thirty per cent duty.   In schedule C was included " clothing ready made and wearing-apparel of every description, of whatever material composed, made up or manufactured," and it subjected them to thirty per cent duty.   Schedule D described " manufacturers of silk, or of which silk shall be a component material, not otherwise provided for, manufactures of worsted, or of which worsted shall be a component material, not otherwise provided for," and imposed a twenty-five per cent duty. The Circuit Court had been requested to instruct the jury that if they should find that at the date of the act the shawls in question were commercially known as manufactures of worsted, or of which worsted was a component material, and that they were not known in trade as clothing ready made, or as wearing-apparel, they were subject only to a duty of twenty-five per cent. This instruction was refused, and this court held, correctly, holding that, while it was true that where words of art, or phrases, are novel or obscure, as in terms of art, it was proper to explain them by reference to the art or science to which they were appropriate, the rule was not so when the words or phrases

are familiar to all classes, grades, and occupations; and that the popular or received import of words furnishes the general rule for the interpretation of public laws as well as of private transactions. The court added, that if it could be conceded that, in the opinion of mercantile men, shawls were not considered wearing-apparel, it would still remain to be proved that this opinion was sustained by the judgment of the community generally, or that the legislature designed a departure from the natural and popular acceptation of language. The case was rested on the basis that "wearing-apparel" was not a technical term. Much less is the phrase, goods "of a similar description."

Upon the whole, therefore, we think there was no error in the charge of the judge in the court below.

*Judgment affirmed.*