BOGLE *et al.* v. MAGONE, Collector.

*(Circuit Court, S. D. New York.  October 30, 1889.)*

1. CUSTOMS DUTIES—CLASSIFICATION—ANCHOVY PASTE.
    Certain fish pastes, known in the trade as "Anchovy Paste" and "Bloater Paste," *held* to be included within the terms "pickles and sauces of all kinds" in schedule G, act March 3, 1883, (Tariff Index, 284,) and dutiable at 35 per centum *ad valorem.*
2. SAME—CONSTRUCTION OF STATUTE.
    The phraseology of said paragraph "pickles and sauces of all kinds" is to be construed in its natural and ordinary meaning, and not in any particular or restricted trade meaning.

**At Law.**

Action to recover alleged excessive duties exacted by the collector of customs at the port of New York from the plaintiffs on their importations, between November 16, 1886, and July 20, 1887, on certain fish pastes known in the trade as "Anchovy Paste" and "Bloater Paste," contained in small jars, or bottles. The collector levied duty thereon at 35 per centum *ad valorem* under schedule G of the tariff act of March 3, 1883, (Tariff Index, 284,) which reads, "Pickles and sauces of all kinds, not otherwise specially enumerated or provided for in this act, 35 per centum *ad valorem.*" The plaintiffs protested, and claimed the same to be dutiable at 25 per centum *ad valorem* under the same schedule, (Id. 283,) to-wit, "Salmon and all other fish, prepared or preserved, and prepared meats of all kinds, not specially enumerated or provided for in this act, twenty-five per centum *ad valorem.*" The merchandise in suit was shown to be fish paste manufactured by some process or formula known only to the manufacturers thereof, whereby anchovies or bloaters were finely ground and mixed with spices, resulting in a highly seasoned mixture, generally used as a relish with other food, and as a stimulant provocative of hunger or thirst. It was shown by the evidence of several importers of and large dealers in provisions that the term "sauce" had a restricted trade meaning at the time of the passage of the tariff act of March 3, 1883, in which nothing was considered a sauce unless it was in liquid form; that the merchandise in suit was a paste, and not a liquid. Some of the witnesses testified that it was not only used as a relish when taken with food, but was in itself nutritious. On motion for a direction of a verdict in favor of the defendant, defendant's attorney cited *Maillard* v. *Lawrence*, 16 How. 251; *Greenleaf* v. *Goodrich*, 101 U. S. 278; Syn. Ser. 3492.

*Comstock & Brown*, for plaintiffs.

*Edward Mitchell*, U. S. Atty., and *Henry C. Platt*, Asst. U. S. Atty., for defendant.

LACOMBE, J., (*charging jury.*) It is often difficult to determine which of two parallel rules of interpretation promulgated by the supreme court shall be applied; whether we shall take words in their general or in their special meaning. I am unable to differentiate this case from *Maillard* v. *Lawrence*, 16 How. 251, in which the circuit court had been requested to instruct the jury that if they should find that at the date of the act the shawls in question were commercially known as "manufactures of worsted, or of which worsted shall be a component material," and that they were not known in trade as "clothing, ready made," or as "wearing apparel," they were subject only to a duty of 25 per cent. This instruction was refused; and the supreme court sustained such action, holding that, while it was true that where words or phrases are novel or obscure, as in terms of art, it was proper to explain or elucidate them by reference to the art or science to which they were appropriate, it was not so when such words or phrases were familiar to all classes of trade and occupation; that the popular or received import of words and phrases

furnishes the general rule for the interpretation of public laws as well as of private and social transactions.   The court added that, "if it should be conceded that, in the opinion of mercantile men, shawls were not considered wearing apparel, it would still remain to be proved that this opinion was sustained by the judgment of the community generally, or that the legislature designed a departure from the natural and popular acceptation of language."

The phraseology which is used here—"pickles and sauces of all kinds" —seems to call for an exhaustive enumeration.   There is nothing in the words themselves to indicate that they are used in a particular trade meaning; and there is nothing certainly shown in the record as to the facts which were laid before congress when the act was under discussion which would indicate that they were using the word in any particular trade meaning.   The article before us here is, I think, plainly within the popular definition of the word "sauce."   The testimony which we have as to its use, and what is known of its constituents, is sufficient to place it in that category.   Following, therefore, the decision in *Maillard* v. *Lawrence*, and its affirmance in *Greenleaf* v. *Goodrich*, 101 U. S. 278, a verdict must be directed for the defendant.

The jury rendered a verdict for the defendant in accordance with the direction of the court.