## WHITE et al. v. BARNEY, Collector.

*(Circuit Court, S. D. New York. May 16, 1890.)*

1. CUSTOMS DUTIES—GOODS OF SIMILAR DESCRIPTION—DETERMINATION.

In determining whether goods are goods of similar description to delaines, cashmere delaines, muslin delaines, or barege delaines, under the provision for "all delaines, cashmere delaines, muslin delaines, barege delaines, composed wholly or in part of worsted, wool, mohair, or goat's hair, and on all goods of similar description," contained in section 9 of the tariff act of July 14, 1862, (12 U. S. St. 543,) three matters are to be considered: *(a)* The rule which is to be used in determining whether the former goods are similar or dissimilar to the latter; *(b)* the standard of comparison, or, in other words, what are the different varieties of the latter goods with which the former are to be compared and found similar or dissimilar? and *(c)* what are the former goods which are to be compared with that standard?

2. SAME—RULE TO BE APPLIED.

The words, "of similar description," of this phrase, "goods of similar description," if a commercial phrase, with a particular and specific trade meaning other and different from its meaning in ordinary speech and conversation, should, in its interpretation, receive that particular and specific trade meaning; but, if not such commercial phrase, should receive its meaning in ordinary speech and conversation.

3. SAME—MEANINGS IF NOT A COMMERCIAL PHRASE.

While these words, "of similar description," have been held by the supreme court in *Greenleaf v. Goodrich*, 101 U. S. 278, to mean "similarity in product, in uses, in adaptation to uses, and not in appearance or in process of manufacture," the word "product," however, imports an article which is made of something, and which, when made, has characteristics which are apparent to the senses; and in judging as to similarity of product the material of which a product is made, and its appearance when made, may be taken into consideration. By this phrase, "goods of similar description," is meant completed fabrics, composed wholly or in part of worsted, wool, mohair, or goat's hair, and used for dress goods, which also, as completed fabrics, possess qualities of general appearance, character, and texture like unto, or nearly corresponding to, or generally resembling, the qualities which distinguish delaines, or cashmere delaines, or barege delaines, or muslin delaines.

At Law. Action to recover back duties.

The plaintiff, between January 1, and June 23, 1864, imported from England into the port of New York certain dry goods which were classified for duty as similar to delaines, and not exceeding in value 40 cents per square yard, under the provision for "all delaines, cashmere delaines, muslin delaines, barege delaines, composed wholly or in part of worsted, wool, mohair, or goat's hair, and all goods of similar description not exceeding in value 40 cents per square yard," contained in section 9 of the tariff act of July 14, 1862, (12 U. S. St. 543,) and upon which, pursuant to that provision, a duty of 2 cents per square yard was exacted of the plaintiffs by the defendant, as collector of customs at that port. Against this classification and exaction the plaintiffs protested, claiming that these goods were dutiable at 5 per cent. *ad valorem*, instead of 2 cents per square yard, under the provision for "manufactures not otherwise provided for, composed of mixed materials in part of cotton, silk, wool, or worsted, hemp, jute, or flax," contained in section 13 of the aforesaid tariff act. This action was brought to recover the excessive duties claimed to have been exacted.

*Joseph M. Deuel, Almon W. Griswold,* and *W. Wickham Smith,* for plaintiffs.

*Edward Mitchell,* U. S. Atty., and *Thomas Greenwood,* Asst. U. S. Atty., for defendant.

LACOMBE, J., (*charging jury.*) The particular provision of statute with which we are concerned here, is found in the ninth section of the act of July 14, 1862, which provides for an additional duty of 2 cents per square yard "on all delaines, cashmere delaines, muslin delaines, barege delaines, composed wholly or in part of worsted, wool, mohair, or goat's hair, and on all goods of similar description not exceeding in value 40 cents per square yard." The plaintiffs' goods coming into this port in regular course of business, the collector, through his appraising officers and examiners, looked at them, and decided, not that they were delaines of any of these named varieties, but that they were goods of a similar description to one or the other of the kinds of delaines which are enumerated in this section, and laid duty upon them accordingly. Of course the presumption with which we begin this case is that the collector's action, or the collector's determination, was correct; that, as a public officer, who examined the goods through his subordinates, he reached a correct conclusion; and it is to overthrow that conclusion that the plaintiffs come into court,—into the tribunal which the law allows them to seek,—in order to correct what they claim to be a mistake of the collector. The burden of proof, then, is upon the plaintiffs in this case to convince you, by a fair preponderance of proof, that their contention is a sound one, and that the collector erred when he found that plaintiffs' goods were in fact similar to those delaines which are enumerated in the statute. Now, in order to put the case to you in the way in which you can best handle it, it has been determined that a single question be put to you separately as to each kind of goods. Therefore, what will be given to you to take into the jury-room is this paper, with a question written on it, and that question you will answer in writing, and sign your names to the answers. This is the question which you will take with you:

"As to each variety of goods enumerated in the first column, answer 'Yes' or 'No' to this question: Were such goods of similar description to delaines, or to cashmere delaines, or to muslin delaines, or to barege delaines, composed wholly or in part of worsted, wool, mohair, or goat's hair, as such varieties of delaines were known in the trade and commerce of this country in 1862 and prior thereto?"

Then follows an enumeration of names, such as "Alexandra Cloth," "Alpacas," "Tartan Check," "Fancy End," etc. As to each one separately you are to answer "Yes" or "No" to that question. The question which you are to answer as to these goods is whether they were of similar description to the varieties of delaines which I have named. That, you will see, implies three matters for your consideration: (1) The rule which you are to use in determining whether the one variety of goods is similar to the other variety; (2) the determination of the standard of comparison,—that is, what are these different varieties of delaines with which the goods imported here were to be compared and found to be similar or dissimilar? and (3) what are the articles themselves which are to be compared with this standard?

First, as to the rule to be applied. The phraseology is "goods of similar description to delaines, or to cashmere delaines," etc., enumerat-

ing the several varieties. Now, the words "of similar description" constitute a common and familiar phrase in the ordinary use of English words. Sometimes, however, the usage of trade gives to words of ordinary every-day speech particular and technical trade meanings; and therefore, although in a former case (*Greenleaf* v. *Goodrich*, 101 U. S. 278) it has been held by the supreme court that the phrase "of similar description" is not a commercial phrase, yet that court has held in the case of *Schmieder* v. *Barney*, 113 U. S. 646, 5 Sup. Ct. Rep. 624, that the plaintiff might introduce, if he could find it, testimony to show that that phrase has acquired a particular and specific trade meaning other and different from its meaning in ordinary speech and conversation. And to that end plaintiffs have introduced here the testimony of a single witness, (Mr. Cummings,) who says that that phrase did have a particular trade meaning, and he undertook to state what it was. The other witnesses for the plaintiffs, although some of them were business men, and at that time engaged in the dry-goods business, did not testify to the point. I think that all of the defendant's trade witnesses testified that there was no such particular, special, and peculiar trade meaning of the words "of similar description." You are to weigh the testimony on both sides of that assertion, and if you come to the conclusion that the phrase "of similar description" had a peculiar, well-known, and wide-spread trade meaning, other and different from its meaning in ordinary speech, and that it covered a particular kind of goods other than the goods in suit, then you have a short cut out of the difficulties of this case, because, these tariff acts being passed to regulate the trade and commerce of the country, it is to be supposed that words are used therein in their commercial meaning, if they have one. If, however, you are not satisfied upon all the testimony that the plaintiffs have shown by a fair preponderance of proof that there was such peculiar, particular, and specific trade meaning attached to that phrase, "of similar description," you then come back to the proposition with which we started, viz., what rule are you to apply for determining whether goods are similar or not? What is it that makes dry goods "of similar description" to other dry goods? Is there any one thing that is controlling of the answer to that question? Several suggestions have been made here. It was suggested (and I think, if I remember the treasury circular accurately, that was originally the idea of the secretary of the treasury) that if goods were intended for women's and children's dresses, or if they were "dress goods," so called, that circumstance was sufficient to establish a similarity. I charge you, however, that the single fact that they are used for the same purpose as delaines is not sufficient to control your answer to the question. You must go further than that.

Again, it was suggested that the process of manufacture would enable you to determine the question: that delaines, as it appears, were woven in the gray, and that it would be enough for you to find that these goods were dissimilar to delaines, if you found as matter of fact that they were not woven in the gray. Upon this point we gain considerable light from the statutes. In 1861 (only a few months before the passage of this act

with which we are concerned) congress had passed an act using this phraseology:

"On all delaines, cashmere delaines, muslin delaines, barege delaines, composed wholly or in part of wool, gray and uncolored, and on all other gray or uncolored goods of similar description."

Those terms, "gray and uncolored," you will remember, do not appear in the later statute with which we are concerned. The section before you in this case, therefore, is more comprehensive than the earlier section; and, in view of that change of phraseology, I must charge you that it is not sufficient to show dissimilarity, to find a difference in the process of manufacture.

Again, it has been suggested that you are to look only to the materials. The evidence here shows that delaines were made of soft wool, with a short staple, such as the "Australian," or "Botany," so called, which presented generally a dead appearance; that many if not all of plaintiffs' goods contained longer, more wiry, more elastic, or brighter wool; and in some cases pure mohair wool, which came from Turkey, or again alpaca and kindred wools, from South America, and in other cases an English wool, which imitates the mohair or alpaca, thus making a more lustrous fabric. As to this suggestion the statute may again be referred to. It includes (by reference) goods composed wholly or in part of worsted, of wool, of mohair, or of goat's hair. It reads:

"On all delaines, cashmere delaines, muslin delaines, barege delaines, composed wholly or in part of worsted, wool, mohair, or goat's hair, and on all goods of similar description."

The particular kind of wool used is therefore not the sole controlling characteristic. How, then, are you to determine similarity? While each of these characteristics to which I have called your attention as having been suggested in the course of this trial is not by itself controlling, yet each may be considered by you in reaching your conclusion,— a conclusion which must be based on a comparison of the fabrics or products themselves. The supreme court, in a similar case, (*Greenleaf* v. *Goodrich, supra,*) has laid down the rule that the phrase "of similar description" in this act means a similarity in product, in uses, and in adaptation to uses, and not in appearance or in process of manufacture. The word "product," however, imports an article which is made of something, and which, when made, has characteristics which are apparent to the senses. In judging, therefore, as to similarity of product, you may take into consideration the material of which a product is made and its appearance when made.

Finally, by "goods of similar description" in this act was meant completed fabrics, composed wholly or in part of worsted, wool, mohair, or goat's hair, and used for dress goods, which also, as completed fabrics, possess qualities of general appearance, character, and texture like unto, or nearly corresponding to, or generally resembling, the qualities which distinguish delaines, or cashmere delaines, or barege delaines, or muslin delaines. The material of which the goods are composed, the method of their manufacture, so far as you are advised of it, their weave, their

weight, their texture, their surface or finish, their appearance, their feel, their color, their uses, their adaptation to uses,—all of these are elements properly, to be considered by you in reaching your conclusion as to whether these goods imported are similar to the standards. But of course each of these elements is not to have equal weight. Some may be very important, some wholly unimportant. It will be for you to judge as to the relative importance of the several elements which I have suggested to you, and, giving to each its proper value, to then determine, by a consideration of all of them, whether the goods are or are not, in the ordinary use of the English language, "of similar description" to the standard. So much as to the rule. [The court next instructed the jury as to the various samples introduced in proof.]

The jury found a verdict for the plaintiffs.