(C.D. 2544)

Fujii Junichi Shoten, Ltd., et al. *v.* United States

278

United States Customs Court, Third Division

(Decided June 14, 1965)

*Glad & Tuttle* (*Edward N. Glad* of counsel) for the plaintiffs.
*John W. Douglas*, Assistant Attorney General (*Andrew P. Vance* and *Herbert L. Warren*, trial attorneys), for the defendant.

Before DONLON and RICHARDSON, Judges

DONLON, Judge: The issue here is whether a certain edible food preparation, imported from Japan at the port of Honolulu, is within the specific enumeration of paragraph 725, as modified. The protests claim that it is. The collector at Honolulu classified the merchandise under paragraph 1558, as a nonenumerated edible preparation for human consumption.

The plaintiffs of protest 63/17439 are Fujii Junichi Shoten, Ltd., and American Customs Brokerage Co. The plaintiffs of protest 63/19357 are Fuji Shoji, Ltd., and American Customs Brokerage Co. The two protests were consolidated for purposes of trial.

Paragraph 725, under which plantiffs seek classification, as modified by the Annecy Protocol (T.D. 52373) to the Terms of Accession of the General Agreement on Tariffs and Trade, is in relevant part as follows:

Macaroni, vermicelli, noodles, and similar alimentary pastes:

    *      *      *      *      *      *      *

    Containing eggs or egg products                               1½¢ per lb.

The name under which the imported merchandise is sold is Ramen. The two protests involve two different brands of Ramen. Packages of the two products are in evidence. (Exhibits 1, 2.) The ingredi-

ents common to both, as listed on the packages, are wheat flour, egg, and monosodium glutamate. Exhibit 1 contains, additionally, according to the package description, sesame seed oil, sugar soy sauce, kelp powder, powder of dried bonito, extract from soup of shrimps and shellfish and Japanese mushrooms. Exhibit 2 contains none of those additional ingredients as listed above for exhibit 1, but besides the common ingredients of wheat flour, egg, and monosodium glutamate, it contains (according to the package) water, milk, seaweed, lard, fish, and salt.

Both products, after importation, are prepared for consumption as food in much the same manner. A portion of Ramen is placed in a warm bowl and covered with boiling water; the bowl is then covered and allowed to stand from 2 to 5 minutes. When the Ramen has become soft, the water is drained off, and flavoring is added to taste. The product is then ready to be eaten.

It is stipulated that the Ramen of these importations contains eggs or egg products. Plaintiffs do not argue that Ramen is either macaroni or vermicelli or noodles, the products enumerated in modified paragraph 725. What they argue is that Ramen is an alimentary paste, similar to one or another of the three enumerated alimentary pastes, and, therefore, also within the specific enumeration of paragraph 725. Plaintiffs seem not to urge the similarity of Ramen to macaroni. They do urge tariff similarity to noodles and vermicelli.

Defendant concedes that Ramen is an alimentary paste, but argues that it is not a "similar" alimentary paste within the scope of paragraph 725.

An alimentary paste is a nutritious paste. The three alimentary pastes which are enumerated have the common property that they are made of wheat flour, often and preferably but not always the hard varieties of wheat, plus liquid. They may or may not contain eggs, although noodles usually do contain eggs. They are pulled or rolled or otherwise formed into various shapes, and then baked to a hard consistency. When used as food they are prepared by boiling. They are served in different ways, and seasoning is added.

Plaintiffs argue that the end use of Ramen is the same as the end use of noodles and vermicelli, and that precooking and seasoning have not changed this end use. (Plaintiffs' brief, p. 5.)

Plaintiffs also argue that the provision invoked is without words of limitation. (Plaintiffs' brief, p. 4.) This is not so. There is an important word of limitation. It is the word "similar." Not all alimentary pastes are within paragraph 725, but only those that are "similar" to macaroni, vermicelli, and noodles. Congress did not include, without limitation, all forms of alimentary paste in the cited provision of paragraph 725.

There are many edible pastes, some of them commonly accepted as nutritious and, hence, alimentary. Examples are paste for making pie crust, tomato paste, and various fish pastes. Clearly, none of these is a paste that is similar to macaroni, vermicelli, or noodles.

What is the test of tariff similarity? This has been explored in depth by the courts in various cases with respect to different tariff provisions, some of them use provisions and some of them descriptive provisions. It has been interpreted, also, in reappraisement cases.

In *Charles Hardy, Inc.* v. *United States*, 21 CCPA 173, T.D. 46509, the provision construed was a descriptive provision. Included in paragraph 27(a)(3) of the Tariff Act of 1930, were all products "by whatever name known, which are similar to any of the products provided for in this paragraph or in paragraph 1651, and which are obtained, derived, or manufactured in whole or in part from any of the products provided for in this paragraph or in paragraph 1651 * * *." (P. 174.)

The court held "that the evidence affirmatively establishes that the imported merchandise is similar to a number of the products named in paragraph 27, within the common meaning of the word 'similar' as defined by standard dictionaries, and as that word has been defined by this court, when used in tariff statutes, in the case of *United States* v. *Irving Massin & Bros.*, 16 Ct. Cust. Appls. 19, T.D. 42714, and cases therein cited." (P. 177.)

In the *Massin* case, cited by our appeals court in *Hardy, supra*, the word "similar" was construed as follows:

In view of the common meaning of the word "similar" and of the authorities cited, we are of opinion, and so hold, that if goods are made of approximately the same materials, are commercially interchangeable, are adapted to substantially the same uses, and are so used, ordinarily, they are similar, within the meaning of section 402(b). [*United States* v. *Irving Massin & Bros.*, 16 Ct. Cust. Appls. 19, T.D. 42714, at p. 25.]

To be sure, the *Massin* case had to do with appraisement, not classification. However, in reaching its decision, the court, in *Massin*, cited in support of that decision an opinion of the United States Supreme Court in a classification case, *Greenleaf* v. *Goodrich*, 101 U.S. 278. The issue there was construction of the words "similar description." The Court said:

* * * Composed, as the goods were, of the same materials as delaines, having a similar general appearance and intended for the same uses, they might well have been of similar description with colored delaines, though there were differences in the process of manufacture. [*Greenleaf, supra*, p. 283.]

In the more recent case of *Plant Products Corporation* v. *United States*, 44 CCPA 183, C.A.D. 658, decided in 1957, in an opinion written by then Judge Worley, now chief judge, the dimensions of the

word "similar," when used as a test of classification, were reviewed and clearly stated.

\* \* \* As was pointed out in *United States* v. *Freitag & Sons, Inc., et al.,* 21 C.C.P.A. (Customs) 500, T.D. 46961, the test of similarity applied in valuation and classification cases is not the same, and while an element of similarity in one instance may also be an element of similarity in the other, "yet an article similar for one purpose might be wholly dissimilar for another." Also, in *United States* v. *Morganite Brush Co.,* 18 C.C.P.A. (Customs) 90, T.D. 44063, it was said that "similarity for dutiable purposes" is "a very different proposition from the question of similarity for value purposes."

In *United States* v. *R. W. Cramer & Co.,* 21 C.C.P.A. (Customs) 379, T.D. 46911, the following definition of "similar" was applied in determining a question of classification:

> Similar. a. 1. Nearly corresponding; resembling in many respects; somewhat like; bearing a general likeness.

Appellant's brief gives the following additional definitions:

> Similar \* \* \* 1. Nearly corresponding; resembling in many respects; somewhat like; having a general likeness. [Webster's New International Dictionary, 1933 Edition].

> Similar \* \* \* 1. Bearing resemblance to something else; being like in quality, nature, degree, purpose, or other characteristics, but not the same or identical; as, men with similar features. The governments of the thirteen states were all similar, and the political ideas of one were perfectly intelligible to all the others.

The quoted definitions set forth the common or ordinary meaning of the word "similar" which is to be applied in classification cases such as the instant one, but it is clear that they allow a wide range in interpretation. The only thing they establish with certainty is that similar articles must be alike in some respects and different in others. The degree may vary from "resembling in many respects" to being merely "somewhat like" or "like in quality, nature, degree, purpose, or other characteristics." It is evident, therefore, that no hard and fast rule can be laid down, but that the exact degree of likeness required to constitute similarity in any particular case must be a matter of opinion based on consideration of the particular circumstances involved. [*Plants Products, supra,* at p. 188.]

Granted that Ramen is different from macaroni, vermicelli, and noodles in some respects, we turn to an examination of the record to ascertain in what repects it is like them and in what respects unlike them.

They are alike in that both are alimentary pastes, chiefly made of wheat flour. Both require the application of hot water, in some degree, in their preparation for consumption. They are alike in that some seasoning is usually added in the course of preparation. Ramen is like vermicelli in appearance. Noodles usually contain eggs.

Ramen is unlike in that the enumerated pastes are prepared by boiling, whereas Ramen is prepared by heating with boiling water. They are unlike in that Ramen contains ingredients which impart flavoring

or seasoning, perhaps insufficient for taste, while macaroni, vermicelli, and noodles, as packaged for sale, usually do not contain seasoning.

It is defendant's contention that Ramen is so different from the *eo nomine* alimentary pastes of paragraph 725, that it can not be deemed "similar" to them, even though it is an alimentary paste.

Defendant argues that plaintiffs have not shown what kind of wheat is used in making Ramen. This is so, but it is not a failure of essential proof. The Summaries of Tariff Information, 1948, volume 7, part 3, page 22, cited by defendant in its brief (p. 9), state that "Macaroni, spaghetti, vermicelli, noodles, etc. (hereinafter called alimentary pastes), are prepared *either from* semolina, durum flour, farina, *hard-wheat* or *soft-wheat flour*, or from combinations of two or more of them." [Emphasis supplied.] It appears not to be necessary to show that hard-wheat flour is the wheat constituent of paragraph 725 alimentary pastes.

That some seasoning is included seems immaterial, on the same authority, for the 1948 Tariff Summaries include soy sauce as one possible ingredient. This likewise would seem to indicate an awareness that there are oriental pastes, since it is well known that soy sauce is more usual as an Asian ingredient than as an Italian ingredient.

Applying the test laid down by our appeals court in the *Plant Products* case, *supra*, we find on the record here that Ramen is an alimentary paste, like those *eo nomine* listed in modified paragraph 725 in a sufficient degree so as to constitute tariff similarity.

The protest claims to a duty rate of 1½ cents per pound under modified paragraph 725 are sustained as to merchandise identified in the entries as Ramen. As to other merchandise and other claims, the protests are dismissed.

Judgment will be entered accordingly.