**K B S TRADING CO., Ltd., American Customs Brokerage Co. et al.**

**v.**

**UNITED STATES.**

C.D. 3720; Protests 66/31599–22044, etc.

United States Customs Court,
Third Division.
Feb. 25, 1969.

the package as well. It was imported from Japan and entered at Honolulu on various dates in 1964, 1965, and 1966. The protests were consolidated at trial and are limited to the merchandise described in the invoices as either "Yokohama Saimin," or "Hoka Hoka Ramen," or "Miyakoichi Chuka Men," or "Kanmen Tsumeawase," or "Instant Yanmar Ramen," or "Kinjyo Brand". All of the above are indicated to be with soup base.

Glad & Tuttle, Los Angeles, Cal. (Edward N. Glad, Los Angeles, Cal., of counsel), for plaintiffs.

William D. Ruckelshaus, Asst. Atty. Gen. (Andrew P. Vance, New York City, trial attorney), for defendant.

Before RICHARDSON and LANDIS, Judges.

RICHARDSON, Judge:

The merchandise at bar consists of plastic or cellophane wrapped alimentary paste, packaged with packets containing soup base and sold as a unit, sometimes having a packet of garnishment within

Counsel for both sides stipulated that one of the items in this merchandise consists of alimentary paste without eggs.

The customs official classified the merchandise at bar as edible preparations not specially provided for under item 182.91 of the Tariff Schedules of the United States and assessed with duty at 20 per centum ad valorem. The plaintiffs claim it is properly classifiable as alimentary paste under item 182.35 or 182.36, dutiable at 1 cent or 1.5 cents per pound, and soup base under item 182.52, dutiable at 14 per centum ad valorem.

The involved statutes of the Tariff Schedules of the United States are:

Macaroni, noodles, vermicelli, and similar alimentary pastes:

| | |
|---|---|
| 182.35 | Not containing egg or egg products .....1¢ per lb. |
| 182.36 | Containing egg or egg products ........1.5¢ per lb. |

Soups, soup rolls, soup tablets or cubes, and other soup preparations:

\* \* \* \* \* \* \* \*

| | |
|---|---|
| 182.52 | Other ...........................14% ad val. |

Edible preparations not specially provided for (including prepared meals individually packaged)

\* \* \* \* \* \* \* \*

| | |
|---|---|
| 182.91 | Other ...........................20% ad val. |

Plaintiffs introduced the testimony of four witnesses and four exhibits. Defendant introduced the testimony of six witnesses and one exhibit.

The testimony of plaintiffs' witnesses does not negate use of the imported merchandise as a "meal," and their exhibits

do not negate "preparation" of the articles involved prior to importation.

Roy F. Uejio, vice-president and assistant manager of Royal Trading Company, Ltd., testified for the plaintiffs, stating that as part of his duties he had tried out new food products for his company. He

352

prepares and consumes new products or foodstuffs to determine whether or not the company should add it to their line of merchandise. He has eaten the merchandise at bar himself but has not seen it eaten by other people. He further testified he has used these products in preparing a variety of dishes, notably, sukiyaki and fried noodles. In these dishes he did not use both the soup base and the alimentary paste, using merely one of these items and saving the other for future use. Additional ingredients not found in the merchandise at bar must be added to make the sukiyaki, or fried noodles, which Mr. Uejio testified he prepared from the imported products. Mr. Uejio further stated that he recommends the addition of roast pork, seasoned vegetables or onions to make saimin taste better, although he admitted the products are edible if prepared according to directions without the addition of other ingredients.

Mr. Yoshimi Endo, plaintiffs' second witness, testified he is employed by Shirokiya, Inc. as sales manager. Shirokiya is an importer, wholesaler, and retailer, handling food items, among other things. Among Mr. Endo's duties is the testing of new products to determine whether the company should handle the item. Mr. Endo has used the noodle portion of the imported merchandise to make sukiyaki or fried noodles while saving the soup stock and garnishment for future use. He would add a raw egg to the soup when preparing saimin from the imported merchandise. He stated:

It's a common sense, and I personally, frankly believe that any housewife or any cook would just use noodles package and serve as it is, everybody here should be sorry for marrying that woman, a woman of the house. [R. 45.]

He did admit it is edible as it is.

Mr. Hitjiro Matsu, the third witness, is the manager and treasurer of Maruki Hawaii, Inc. He, too, testified that he has used the noodle portion only, preserving the soup base for future use when making fried noodles. He generally added additional ingredients not found in the imported merchandise when preparing saimin. He, too, admitted, however, that it was edible without the addition of other ingredients, such additions being a matter of personal taste.

Mr. Charles T. Lee, plaintiffs' last witness, is the vice-president and sales manager of K.B.S. Trading Company, Ltd. He, too, is familiar with the imported merchandise, having prepared it for himself as well as having sold it. He has used the noodles alone to make other dishes. He did admit he did not know if purchasing the imported merchandise for use in making dishes other than saimin was common. He himself used it because he got it wholesale.

Among defendant's witnesses was Mrs. Marjorie Abel. She is from the nutrition branch of the Hawaii State Health Department. She testified that a prepared meal was " * * * something that has to be put through the major processes of cooking before they are—it is marketed. And the housewife has to put in the minimum amount of time, and, well, it's possible to put in a minimum number of additional ingredients." (R. 75–76.) Mrs. Abel testified that normally a housewife would not purchase exhibits 1, 2, 3, or 5 to make fried noodles, because of the cost. It would be more economical to purchase raw alimentary paste.

Mrs. Muriel Reiko Kamada Miura, the defendant's second witness, is the director of the home economics department of the Honolulu Gas Company. She has a Master's degree in home economics from Columbia University. She testified that she considered the exhibits to be prepared meals even though as a matter of personal taste, most people would add additional ingredients to dress it up when they had them. She made reference to a survey of the Betty Crocker people, who found that most housewives prefer to supply additions to a prepared mix to be

made by themselves rather than have the mix in and of itself be complete. The Betty Crocker cake mix was found to sell better when the housewife had to add her own eggs rather than just adding water.

Mr. Tokizo Okahara, defendant's third witness, is president and general manager of Okahara Saimin Factory, Ltd. He testified he considered the imported merchandise to be a prepared meal, although he did not qualify as instant, as it took a few minutes to prepare. In his opinion the addition of other ingredients in the imported merchandise merely makes a more attractive dish but is not necessary.

Mrs. Juliet F. Tong, a housewife employed part-time as a public health nutritionist by the Department of Health of the State of Hawaii, testified that she considered the exhibit 3 to be a bad meal because it is only carbohydrate. As a nutritionist she would have to add some meat and some vegetables or fruit, but her daughter, like most people in Hawaii, would just eat this (meaning the merchandise at bar) for a meal.

Mr. Ronald Sakamoto, a commodity specialist with the United States Customs Service, testified that he classified the merchandise at bar and has eaten similar merchandise in his own home as an entire meal without having added any other ingredients. At Mr. Vance's request he ate some of this imported merchandise just as it came from the box, and other portions he soaked in a bowl of cold water to soften before eating. In both instances he found it to be edible.

Mr. Wilfred Y. Ogawa, a commodity specialist of the United States Customs Service, who does not classify merchandise in the food line, testified he has had experience with the merchandise at bar by having eaten it and similar merchandise in his own home. He, too, considered it a meal to which nothing else had to be added.

This case involves the determination of the common meaning of the term "pre-pared meal," which appears for the first time in the Tariff Schedules of the United States.

The dictionary definitions of the term "meal" are:

Funk & Wagnalls New Standard Dictionary, 1952 Edition:

*meal; n.* 1. The portion or quantity of food taken to satisfy the appetite; the substance of a repast; as, he takes three *meals* a day. * * *

Webster's New International Dictionary, 1957 Edition:

*meal,* n. * * * The portion of food taken at a particular time to satisfy appetites, repast; also act or time of eating a meal.

The definitions of the term "prepared" are:

Funk & Wagnalls New Standard Dictionary, 1952 Edition:

*prepared,* 1. Made ready or suitable; ready; specif., made ready for use by special treatment; as, *prepared* food. * * *

Webster's New International Dictionary, 1957 Edition:

*prepared,* adj. Made ready fit, or suitable beforehand; also, adapted; ready; equipped; fitted out; made. * * *

█ It is well settled law that the classification of the collector is presumed correct and the plaintiff assumes the burden of proving that the classification is incorrect and affirmatively proving the correctness of the claimed classification. See Palmar Import Co., Inc. v. United States, 57 Cust.Ct. 2, C.D. 2708, Novelty Import Co., Inc. v. United States, 53 CCPA 28, C.A.D. 872, and United States v. John A. Steer Co., 46 CCPA 132, C.A.D. 715.

Plaintiffs' own witnesses have admitted the use of the merchandise at bar as a meal. Further, an examination of the exhibits reveals the merchandise is packaged and sold as a unit designed to be

made into a single dish. See Coro, Inc. v. United States, 41 CCPA 215, C.A.D. 554; United States v. Halle Bros. Co., 20 CCPA 219, T.D. 45995. The package directions, or at least that portion written in English, gives instruction for the preparation of saimin from the package contents and water. Only two of the samples, exhibits 1 and 5, make reference in English to the addition of ingredients not found in the imported merchandise. These references were, "*If* you add roasted pork, chopped onion, and other seasoning vegetables, it taste much better" and "*If* you added roasted pork, chopped onion, and other seasoning vegetables, it tastes much better," respectively. [Emphasis added.] The other exhibits introduced by plaintiffs may have had reference in the Japanese printed matter to other dishes in which the imported merchandise could be used, but since no English translation has been provided, the court cannot assume such reference exists. Plaintiffs' witnesses testified they used merely the alimentary paste portion of the imported merchandise to make sukiyaki or fried noodles, because for them it was cheaper since they either got it wholesale or at cost. None of them could testify as to the comparative price for raw alimentary paste used in the same dishes, since they were not in the habit of shopping for their families.

Defendant's witnesses testified that it would be far too expensive for the average housewife to purchase the imported merchandise when she wished to use solely the alimentary paste portion.

On the record, plaintiffs failed to overcome the presumption of correctness attached to the collector's classification. The exhibits themselves appear to be prepared meals individually packaged. None of plaintiffs' witnesses denied that the imported merchandise was sold as prepared saimin or ramen. Plaintiffs' witnesses testified to other uses which could be made of this merchandise, but the English language directions on the merchandise itself gave no hint of such other use. And none of defendant's witnesses would agree to the suitability of said merchandise for other dishes in view of the expense.

For the reasons above stated we hold the merchandise at bar to be properly classified under item 182.91 of the Tariff Schedules of the United States as prepared meals, individually packaged. The classification by the collector is affirmed.

Judgment will be entered accordingly

LANDIS, Judge (concurring):

I join in the opinion of my colleague and would add but one comment.

While this case was tried and briefed on the issue of whether the imported merchandise is a "prepared meal", I am not at all sure that plaintiffs could have overturned the collector's classification on a mere showing that it was not a "prepared meal" [1]. Assuming that it was not a "prepared meal", it would still be presumptively and "edible preparation not specially provided for" i.e. more than just alimentary paste without eggs, or soup preparations, as claimed.

In short, I am of the opinion that plaintiffs had a greater burden than just to show the imported merchandise was not a "prepared meal".

---

1. The pertinent portion of TSUS under which the merchandise was classified follows:

   Edible preparations not specially provided for (including prepared meals individually packaged):

   *    *    *    *    *

   182.91  Other .......... 20% ad val.