For the reasons stated, the action is dismissed. Judgment will be rendered accordingly.

(C.D. 4504)

Nishimoto Trading Company, Ltd.
Arthur J. Fritz Company  } *v.* United States

54

(Decided March 18, 1974)

*Glad & Tuttle (Edward N. Glad* of counsel) for the plaintiffs.
*Irving Jaffe,* Acting Assistant Attorney General (*Steven P. Florsheim,* trial attorney), for the defendant.

RE, Judge: The legal question presented in this case pertains to the proper classification, for customs duty purposes, of certain merchandise imported from Japan, and described on the invoice as "Japanese style alimentary paste 'Sapporo Ichiban.' "

The merchandise was classified by the customs officials under item 182.95 of the Tariff Schedules of the United States as "edible preparations not specially provided for (including prepared meals individually packaged)." Consequently, it was assessed with duty at the rate of 14 per centum ad valorem.

Plaintiffs contest that classification and claim that the merchandise is properly classifiable under item 182.52 of the tariff schedules as "other soup preparations." Hence, plaintiffs contend that the merchandise is properly dutiable at the rate of 9.5 per centum ad valorem.

The pertinent provisions of the tariff schedules read as follows:

Classified under:

Item 182.95, as modified by T.D. 68–9:
  "Edible preparations not specially
    provided for (including prepared
    meals individually packaged):

  \*      \*      \*      \*      \*      \*      \*
      Other:

        \*      \*      \*      \*      \*      \*      \*
182.95          Other _____ 14% ad val."

Claimed under:

Item 182.52, as modified by T.D. 68–9:
  "Soups, soup rolls, soup tablets or
    cubes, and other soup preparations:

  \*      \*      \*      \*      \*      \*      \*
182.52        Other _____ 9.5% ad val."

Two prior cases have dealt with the merchandise presently before the court, and their records have been incorporated in the present case. The two prior actions are *KBS Trading Co., Ltd., American Customs*

*Brokerage Co. et al.* v. *United States*, 296 F. Supp. 350, 62 Cust. Ct. 173, C.D. 3720 (1969), and *Marukai Hawaii, Inc., et al.* v. *United States*, 66 Cust. Ct. 38, C.D. 4165 (1971).

That the merchandise in these three cases is of the same kind, or similar, cannot be questioned, and is acknowledged by the parties. It is adequately and accurately described in the *KBS Trading* and *Marukai* decisions. In view of these decisions, and particularly the summary of the evidence set forth in the *Marukai case*, no detailed description is required here.

Suffice it to say that the merchandise, in its imported condition, consists of a package which contains a mass of oriental type noodles, and a packet of soup base. It is prepared by boiling the noodles in approximately two cups of water. When the noodles are tender, the soup base is added. To this preparation there may be added by the consumer other available items of food such as meats, eggs, fish cakes or vegetables. It is not contested that the merchandise is a quick-cooking form of what is known as *saimin* or *ramen*. It is called *saimin* in Hawaii, and is known as *ramen* by orientals.

It is worthy of note that the package which contains the imported merchandise represents it as "Japanese Style Noodles With Soup Base." It is suggested that it be served "* * * as a luncheon," or "* * * as an evening snack." It is also represented as a "* * * meal in itself."

In the *KBS Trading* case, decided in 1969, the merchandise had been classified as an entirety as "edible preparations not specially provided for (including prepared meals individually packaged)." It consisted of "alimentary paste, packaged with packets containing soup base and sold as a unit * * *." 62 Cust. Ct. at 174. Plaintiffs claimed that the *saimin* or *ramen* should have been classified separately as alimentary paste, and as soup base. The evidence indicated that, when prepared, the importation was edible without the addition of other ingredients.

The court determined the common meaning of the words "prepared meal," which appeared for the first time in the Tariff Schedules of the United States. Judge Richardson, writing for the court, stated:

> "Plaintiffs' own witnesses have admitted the use of the merchandise at bar as a meal. Further, an examination of the exhibits reveals the merchandise is packaged and sold as a unit designed to be made into a single dish." 62 Cust. Ct. at 177.

The court, consequently, concluded that the plaintiffs had failed to overcome the presumption of correctness that attached to the classification by the customs officials, and added that the "exhibits themselves appear to be prepared meals individually packaged." Hence, the court sustained the classification, and held that the merchandise was properly

classified as "prepared meals, individually packaged." 62 Cust. Ct. at 178.

In the *Marukai* case, decided in 1971, the merchandise again consisted of packages of alimentary paste, i.e., dried noodles, with enclosed packets of soup base. As in the *KBS Trading* case it was classified as "edible preparations not specially provided for (including prepared meals individually packaged)." Plaintiffs contested the classification and claimed that it was properly classifiable as "soups, soup rolls, soup tablets or cubes, and other soup preparations."

On the question of the classification of the importation as an entirety, the court in the *Marukai* case expressed its holding as follows:

> "Accordingly, we find and hold, as did the court in *KBS Trading*, that the noodles and soup base are not separately classifiable and we overrule the protests with respect to such claim." 66 Cust. Ct. at 43.

There can be no doubt that, as stated in the *Marukai* decision, the imported merchandise "which is a new and distinct article of commerce formed by joining the alimentary paste and the soup stock" is an entirety for tariff purposes. *Ibid.*

In the *Marukai* case, citing *Crosse & Blackwell Co.* v. *United States*, 36 CCPA 33 C.A.D. 393 (1948), plaintiffs contended that the provision for "other soup preparations" is one without limitations, and therefore, includes all forms of the article. Judge Rosenstein, however, writing for the court, indicated that, for the cited *eo nomine* principle to apply, there must be a showing that the particular merchandise is so named, i.e., it must "be recognizable as a form of the named article." 66 Cust. Ct. at 44.

After setting forth some of the definitions which bear upon the common meaning of the word *soup*, the court concluded that "soup is essentially, a liquid food which may contain pieces of solid food such as meat, pasta, or vegetables." 66 Cust. Ct. at 45. Based upon the testimony and the exhibits it found that the merchandise did not "comport with the common understanding of soup preparations."
The court stated:

> "When prepared as described, the resulting product is *not noodle soup*, as plaintiffs claim, *but a flavored noodle preparation, commonly known as 'saimin' or 'ramen'.* The fact that this type food is served in a soup or saimin bowl does not make it a soup any more than chili, a well known dish prepared from beans and spices, often with the addition of meat is a soup because it is usually served in a bowl and eaten with a spoon." (Emphasis added.) 66 Cust. Ct. at 45.

Significantly, the court added:

"Moreover, there is no evidence of record that the imported merchandise is bought, sold, or offered to the consuming public as a soup preparation. The printing on the packaged exhibits * * * describes the contents variously as 'Saimin with Soup Base', 'Japanese Style Alimentary Paste', 'Oriental Type Alimentary Paste Product' or, as * * * 'Japanese Style Alimentary Paste with Soup Base'." *Ibid.*

In view of the evidence of record the court in the *Marukai* case concluded:

"Obviously, what is being offered is an oriental style noodle dish, not a noodle soup preparation." *Ibid.*

The court, thereupon, stated its holding as follows:

"Plaintiffs have in no wise controverted the finding in the incorporated case [i.e., the *KBS Trading Co.* case] that 'the exhibits themselves appear to be prepared meals individually packaged.' The principle of *stare decisis* requires a like determination herein." *Ibid.*

In the present case, plaintiffs, once again relying on the *Cross & Blackwell* case, urge that since the provision for "other soup preparations" is a provision without limitations, "it takes all forms of soup preparations, including the merchandise at bar." In substance, plaintiffs assert that the importation is a soup preparation, and that such a classification is more specific than "edible preparations not specially provided for (including prepared meals individually packaged)."

Plaintiffs, in the case at bar, quote from the recent case of *Leaf Brands, Inc.* v. *United States,* 70 Cust. Ct. 66, C.D. 4409 (1973), to substantiate their claim that "item 182.52 is more specific than item 182.95, TSUS." In the *Leaf Brands* case an importation known as "Zing," consisted of a powder composed of approximately 95 percent dextrose, plus citric acid, flavoring and coloring. It was contained in a simulated softdrink bottle and was sipped up by the user through a straw.

The quotation from the *Leaf Brands* case states:

"At the outset, it should be noted that item 182.91—the provision under which the present import was classified—is limited to edible preparations 'not specially provided for'. Thus evidence that either item 157.10 or 155.75 is satisfied is '*ipso facto*' also evidence that item 182.91 'is not pertinent'. *Venetianaire Corp. of America* v. *United States,* 60 CCPA 75, C.A.D. 1084 (1973)." 70 Cust. Ct. at 69.

In the *Leaf Brands* case the "Zing" had been classified by the customs officials under item 182.91 as "edible preparations." The defendant

claimed alternatively that it was a flavored sugar dutiable under item 155.75. Plaintiff claimed that it was dutiable as "confectionery" under item 157.10 which specifically covered "candy, and other confectionery."

The evidence and the sample clearly established that the product was "confectionery," a term applicable to many kinds of sweet-tasting articles eaten for their taste and flavor without further preparation, and usually sold at confectionery outlets. Hence, the importation was held to be properly classifiable under item 157.10 as "confectionery." Having found that the "Zing" was, in fact, a "confectionery," the court, of course, set aside the classification of the customs officials and sustained plaintiff's claim.

It is to be noted that, pertaining to the defendant's alternative claim, the court stated:

> "Whether item 155.75 [covering sugar, etc.] is narrower in scope than item 157.10 [covering candy and other confectionery] need not be reached since the court finds that the merchandise in issue [Zing] is more than flavored sugar. It is sugar plus citric acid plus fruit flavor plus coloring which have been combined to produce a confectionery product in powder form." 70 Cust. Ct. at 74.

The court, in the *Leaf Brands* case, found that plaintiff's testimony was sufficient to establish a *prima facie* case that the product, i.e., "Zing," was "confectionery," as claimed. It added that the defendant therein "offered no proof in rebuttal to support its classification." Since the court found that the merchandise was "confectionery," clearly the *eo nomine* classification was properly made to prevail over the classification for "edible preparations."

The principle of customs law applied by the court in the *Leaf Brands* case is not in question. Clearly, if the product is specified *eo nomine* in the tariff schedules, such a classification must be applied and prevails over all others.

Here, the two prior decided cases have sustained the classification of the *saimin* or *ramen*, and have held that it is not a soup or soup preparation. Furthermore, the quotation from the *Leaf Brands* case, upon which plaintiffs rely, is inapplicable because the court in the *KBS Trading* and *Marukai* cases did not merely sustain the classification as edible preparations "not specially provided for." The merchandise was held to be "prepared meals individually packaged." As stated in the penultimate paragraph in the *Marukai* case:

> "Plaintiffs have in no wise controverted the finding in the incorporated case that 'the exhibits themselves appear to be prepared meals individually packaged.' The principle of *stare decisis* requires a like determination herein." 66 Cust. Ct. at 45.

Plaintiffs' reliance on the *Leaf Brands* case is misplaced since the *Leaf Brands* case did not deal with "prepared meals individually packaged." Its animating principle, i.e., the applicability of the *eo nomine* classification, could only apply in the case at bar if the merchandise were found to be "soups" or "other soup preparations." But this, indeed, is the fact to be proven, and two prior decisions of this court have held that it is not.

Furthermore, in the *Leaf Brands* case, the court noted that once plaintiff established its *prima facie* case the burden of proof shifted to the defendant, and the defendant therein "offered no proof in rebuttal to support its classification." Surely this cannot be said here.

In the present case plaintiffs called nine witnesses and offered 24 exhibits. One of these witnesses was plaintiffs' counsel. The defendant called eight witnesses and offered 17 exhibits. The case was tried with great vigor, and counsel deserve to be congratulated for their competence and zeal. Nevertheless, notwithstanding the voluminous record, an accurate and fair presentation or description of the product is still to be found in the decisions of the two prior cases.

If the court in the *Marukai* case had found that the merchandise was soups or other soup preparations, the present action would not have been brought. The question presently before the court, however, was squarely presented in the *Marukai* case, and the determination of the court is clear and unmistakable. The plaintiffs may not agree with the holding, but they cannot deny its import, or that it was made.

The defendant, in its brief, highlights that this is the second case where the identical question is presented, viz: whether the merchandise was properly classified under item 182.95 [182.91 in the prior case], or whether it is a soup preparation under item 182.52. It urges that plaintiffs have "shown no cause for modification of the finding" in the prior case, i.e., *Marukai*. Indeed, the defendant suggests that the additional evidence in the present case "buttresses" the finding of the prior case that the merchandise is not a soup preparation, and that the prior decision is "*stare decisis* of the issues" in the instant case.

The *stare decisis* aspect of the case can best be summarized by a quotation from the case of *United States* v. *Dodge & Olcott, Inc.*, 47 CCPA 100, 103, C.A.D. 737 (1960). The Court of Customs and Patent Appeals in that case stated:

"While we always are open to consider all proper and pertinent matters which bear upon the issue of possible error in an earlier decision, such matters when presented must be clear and convincing. It is unfair both to the courts and to the parties litigant that there be a readjudication of issues previously determined except upon *a clear and convincing showing of error. This requirement is not satisfied by a reargument of the former issues on the same or a*

*merely cumulative record.* We are unwilling to find error in a prior decision where, as here, the only reason advanced is that the party asserting the error does not agree with our prior decision." (Emphasis added.)

The court agrees with the defendant's statement that plaintiffs have "shown no clear and convincing error on the part of the Court in C.D. 4165 [*Marukai*] which would lead to a contrary result herein." Moreover, defendant correctly points out that:

"The only thing that plaintiffs have accomplished in the instant action is to reargue one of the issues in C.D. 4165 and offer additional evidence of a cumulative nature, *i.e.*, opinions of witnesses on whether or not the subject merchandise is a noodle soup, and the reasons for their opinions. Considering the entire record herein, including the evidence offered by defendant in support of the classification of the subject merchandise, the decision in C.D. 4165 is sound in that plaintiffs herein – as therein – have failed to prove that the subject merchandise was incorrectly classified and that their claim is correct."

In its reply brief, plaintiffs submit that the holding in the *Marukai* case "is not *stare decisis* of the factual issues herein to be decided on the more expanded record in the present case." Plaintiffs assert that "the defect of the record noted by the court in the *Marukai Hawaii* case * * * no longer exists." The "defect," refers to the court's statement, in the *Marukai* case, that there was no proof that "the imported merchandise is bought, sold, or offered to the consuming public as a soup preparation." 66 Cust. Ct. at 45. As indicated in the court's footnote to the previous quotation an effort was made to prove this in the *Marukai* case, but the court was not persuaded. The effort was also made in the present case. Hence, plaintiffs assert: "Although noodle soup preparations such as involved herein are labeled with trade names such as 'saimin' or 'ramen,' when prepared as directed on the package, they are held out to the public as noodle soup." (Plaintiff's reply brief, p. 2)

Plaintiffs, however, *assume* that the merchandise is a noodle soup, and state that it is "labeled with trade names such as 'saimin' or 'ramen'." But *saimin* or *ramen* is not a label or a trade name. The product *is saimin* or *ramen*. That is precisely what it is called and how it is commonly known.

There is no doubt that plaintiffs attempted to cure "the defect," but the record will only show that they merely succeeded in repeating testimony and unsubstantiated opinions in the two prior cases. Although the "expanded record" may be more voluminous, the testimony of the present trial is, by and large, cumulative and the sum and substance is, therefore, the same. Perhaps new is the testimony of some of plaintiffs' witnesses, as stated in plaintiffs' brief, that "[w]hen prepared, exhibit 1 [the merchandise in issue] is eaten as a snack or light meal." (Plaintiffs' brief, p. 15.) But this fact only enhances

the persuasivenss of both the *KBS Trading* and the *Marukai* cases that the imported *saimin* or *ramen* is indeed a prepared meal individually packaged. Even on the question whether *saimin* or *ramen* is a soup, or a soup preparation, plaintiffs' witnesses were divided, and offered varying opinions of doubtful reliability.

In customs classification cases the question before the court is whether the plaintiff has succeeded in rebutting the presumptively correct classification of the customs officials. *Sanji Kobata et al.* v. *United States*, 326 F. Supp. 1397, 1399, 66 Cust. Ct. 341, 344, C.D. 4213 (1971). See also *United States* v. *New York Merchandise Co., Inc.*, 435 F. 2d 1315, 58 CCPA 53, C.A.D. 1004 (1970). In this case, as in the *KBS Trading* and *Marukai* cases, the merchandise was classified under the identical provision of the tariff schedules covering edible preparations not specially provided for (including prepared meals individually packaged). It is well established that the presumption of correctness that applies to that classification also attaches to every subsidiary fact necessary to support it. *United States* v. *New York Merchandise Co., Inc.*, 435 F. 2d 1315, 1318, 58 CCPA 53, 58, C.A.D. 1004 (1970) ; *Novelty Import Co., Inc.* v. *United States*, 53 CCPA 28, 32, C.A.D. 872 (1966). Hence, that classification carries with it the presumptively correct finding that the merchandise is something other than soup or a soup preparation as claimed.

The specific question presented here is whether the merchandise, "Sapporo Ichiban," admittedly commonly known as *saimin* or *ramen*, falls within the common meaning of "other soup preparations." In the *Marukai* case, three judges of this court answered this question in the negative and affirmed the classification.

Although the plaintiffs have not discharged their burden of proof in the instant case, the defendant nevertheless urges specific reasons to sustain the classification. It may be appropriate to restate some of them. Thus, *saimin* or *ramen* has a ratio of solid foods to liquid far greater than that found in noodle soup preparations distributed in the United States. This ratio is further increased by the addition of other items of solid foods that are included in the preparation prior to serving. Whereas *saimin* or *ramen* is eaten with chopsticks or a fork and a spoon, in the United States soup is hardly ever eaten with any utensil other than a spoon. Persons eating *saimin* or *ramen* will always eat all of the noodles and solid foods, but will not always drink all of the liquid. Indeed, *saimin* or *ramen* is eaten for the noodles and other solid foods that it contains. Moreover, unlike soups, which are usually consumed with other foods in a meal, *saimin* or *ramen* is usually eaten as a snack or a light one-dish meal. Hence, there is testimony that *saimin* or *ramen* is a solid food.

Plaintiffs' reliance upon the cases of *Fujii Junichi Shoten, Ltd., et al.* v. *United States*, 54 Cust. Ct. 277, C.D. 2544 (1965), and *Shirokiya*,

*Incorporated, and American Customs Brokerage Company* v. *United States*, 54 Cust. Ct. 463, Abs. 69374 (1965), does not require extended discussion. The merchandise in those cases, classifiable under the Tariff Act of 1930, consisted of alimentary pastes, noodles containing flavoring. However, they were not imported with a packet of soup base, as was the merchandise at bar. The merchandise, therefore, is not the same.

In summary, plaintiffs have not succeeded in presenting to the court, in the language of the *Dodge & Olcott* case, such "clear and convincing" matters that warrant disregarding the authority and persuasiveness of the *Marukai* decision. Plaintiffs' additional evidence has largely been offset by the countervailing proof that has been submitted by the defendant in support of the classification. Moreover, in a close case the court cannot ignore the presumption of correctness that attaches to the classification of the customs officials. In this case, whatever doubt may exist is resolved by the application of the doctrine of *stare decisis*. Nothing more need be added that has not already been written in the *KBS Trading* and *Marukai* cases.

In view of the foregoing plaintiffs' claim is overruled. Judgment will issue accordingly.