(C.D. 2974)

WESTCO PRODUCTS, L. A.
FRANK P. DOW CO., INC. } *v.* UNITED STATES

# United States Customs Court, Third Division

(Decided April 17, 1967)

*Glad & Tuttle* (*Robert Glenn White* of counsel) for the plaintiffs.
*Barefoot Sanders*, Assistant Attorney General (*Sheila N. Ziff* and *Alfred A. Taylor, Jr.*, trial attorneys), for the defendant.

Before RICHARDSON, Judge, and DONLON, Senior Judge

DONLON, Judge: Merchandise, a manufacture of Denmark, is described by plaintiffs variously as almond paste, macaroon paste, nougat paste M, confectionery (almond and sugar), and macaroon confection. Regardless of entry (and invoice) names, the record shows that these protests embrace only three different products, made of nuts or other kernels and of sugar, and (in the case of the nougat paste) also containing chocolate cocoa, imported in ten-pound tins.

The merchandise was classified in liquidation as paste; in part, under paragraph 756, as almond paste and, in other part, under paragraph 761, as "nut and kernel paste not specially provided for."

It is plaintiffs' claim that all of the merchandise at bar is dutiable under modified paragraph 506 as "confectionery not specially provided for."

The competing provisions, in relevant part, are as follows:
Paragraph 756 of the Tariff Act of 1930:

Almonds, * * *; almond paste, 18½ cents per pound; * * *.

Paragraph 761 of the Tariff Act of 1930:

Edible nuts, * * *; nut and kernel paste not specially provided for, 25 per centum ad valorem: * * *.

Paragraph 506 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade (T.D. 51802):

Sugar candy and all confectionery not specially provided for:

| * | * | * | * | * | * | * |
|---|---|---|---|---|---|---|

Valued at 6 cents or more per pound_____ 14% ad val.

There is no issue as to value of the merchandise at bar. It is clear that all of the items are valued substantially above 6 cents per pound.

The first issue to be decided is whether plaintiffs' proofs establish error in the collector's liquidation classification. That is plaintiffs' first burden.

The ingredients and their proportions in the three imported items are as follows:

That which is described as almond paste:

Sweet almonds 66% to 66⅔%
Sugar 33⅓% to 34%

That which is described as nougat paste:

| Hazelnuts | 39% |
| Sugar | 39% |
| Chocolate cocoa | 22% |

That which is described as macaroon paste:

| Debittered almonds | 5% |
| Apricot kernels | 55% |
| Sugar | 40% |

The merchandise at bar was imported in ten-pound tins, packed four to a case.

Samples of the almond paste (exhibit 1) and of the nougat paste (exhibit 2) were introduced into evidence.

Mr. Allen Zeigler of Los Angeles, testifying for plaintiffs, identified himself as managing partner of Westco Products, bakery supply distributors, one of the plaintiffs. He said that his duties include the various functions of management, that is, buying, supervising salesmen, the office and warehouse employees and the drivers, as well as checking purchased products and their ingredients from the standpoint of compliance with Federal and other governmental regulations. He does not sell, except to a limited extent; but he is familiar with the uses of the products that Westco sells.

He described Westco as "the largest distributors and manufacturers of ingredients used by the bakery and confectionery trades in the western part of the United States." Westco has a test kitchen and a test bakery in its laboratory. Mr. Zeigler said, of the test kitchen and test bakery: "We use these and make finished or saleable products for demonstration or test purposes." He amplified this by saying:

Well, we will take a shipment at random and open a case, open thereafter one of the individual containers. Our chemists will observe it and on occasion we will make actual, finished, consumable products out of these units; items. [R. 5.]

As to the Westco customers who buy the imported ten-pound tins, the record of Mr. Zeigler's testimony, on direct examination, is as follows:

Q. Do you know how this merchandise is used by the purchasers from you?—A. Generally, yes.

Q. How do you happen to know?—A. Because I have seen it in their shops. I have seen the finished products that they sell. I have bought them. And I have been in my customers' places of business and watched them while they were using these items.

Q. How is it used?

Mrs. Ziff: Is this question limited to the merchandise which is imported? I will object otherwise. By that I specifically mean the merchandise imported in the ten-pound tins.

Judge Nichols: Address your answers to the ten-pound tins.

A. I have seen the ten-pound cans of nougat paste, and I have seen the ten-pound cans of almond paste, and I have seen the ten-pound cans of macaroon paste that we purchased and imported in 1958 and 1959 being used in the places of business of Westco Products' customers. I have also seen it being used in our own laboratory.

Q. How do your customers use it?—A. For the most part our customers who buy these products are confectioners, the hotels, where they employ what are known as conditors. And they use these products principally as marzipan, a confection, a candy. They take it out of the larger containers, they paper it, they cut it, mold it. Sometimes they add a little color to it. Sometimes they put a decorative leaf on it. They may make a marzipan raspberry in which case they use a raspberry leaf. They may make a marzipan carrot, in which case they might shape it like a tiny carrot and color it. Then it is sold without having changed the ingredients at all, only the shape of the product.

Q. Are ingredients added to this product?—A. Not generally. [R. 16, 17, 18.]

On cross-examination the record shows the following testimony by Mr. Zeigler:

Q. Have you seen—again, I refer to the items used in ten-pound tins—them used as filling in baked articles?—A. They are sometimes used as filling.

\* \* \* \* \* \* \*

Q. Is the macaroon paste sold principally to bakers?—A. The macaroon paste would be sold about 50 percent to bakers and about 50 percent to confectioners.

Q. You were asked if anything was added to the almond paste, nougat paste, when they were made up into marzipan.—A. To my knowledge, sometimes, as I testified, some confectioners or some bakers, in making marzipan out of these products, might color it or might add a decorative leaf.

Q. Do they ever add anything to make it less sweet?—A. I suppose some do. I never observed them doing that.

Q. When they take it out of the ten-pound tins I believe you stated that they fashion them into various shapes?—A. Sometimes.

Q. What else do they do?—A. You asked me and I testified sometimes it is used as a filling, particularly the macaroon paste might be

used as a filling in which case they are still shaping it, they are not adding anything to it.

Q. When used as a filling is this often in a baked article, or is the article in which it's used as a filling baked?—A. If it's used as a filling, and again, particularly, the macaroon paste rather than either the almond paste or nougat paste, it might be used in a baked product, yes.

Q. Would the other paste which you referred to as being made into marzipan, those used for that by the confectioners, they are fashioned into various shapes?—A. Yes. They usually either fashion it into another shape or some of them simply cut it into biteable sizes. [R. 18, 19, 20.]

Mr. Zeigler's testimony as to use of the pastes by cutting in "biteable sizes" is not impressive as evidence of an industry-wide use. He personally does this in his office; those working in his laboratory "have cut it and eaten it in that fashion." The only customers of Westco whom he could recall as having offered it thus for sale, are six shops in the town of Solvang, California. (Rand McNally International World Atlas, 1962, shows that Solvang is in Santa Barbara County, population 1,325.)

Weighing this testimony and the record as a whole, we are of opinion that, as Mr. Zeigler testified, the imported pastes were sold by his firm in the ten-pound tins in which the paste was imported from Denmark, to confectioners and bakers, not as finished products but as ingredients that were used by the customers in making candy and, to some extent, in making baked products.

The tariff classification under which plaintiffs claim is not lacking in specificity. It enumerates "sugar candy and other confectionery." The definitions of "candy" and "confectionery" in Webster's New International Dictionary, 2d edition (1956), are helpful.

candy *n.* \* \* \* 3. A food product made principally from cane or beet sugar boiled to the desired density, enriched or varied by the addition of fruits, nuts, chocolate, milk products, flavors, and colors, *molded or worked into various shapes or forms* of a solid or semi-solid consistency, and, often, variously coated. Molasses, corn sirup, cornstarch, maple sugar, and gelatin are also used as ingredients in certain kinds of candy. *Chiefly U.S.* [Emphasis added.]

confectionery *n.* 1. Sweetmeats, in general; things prepared and sold by a confectioner; confections; candies.

Candy, according to this definition, may be made either with cane or beet sugar or some other sweetener. If made with sugar, it is the sugar candy of the paragraph 506 enumeration. If candy is made without sugar, using instead molasses, corn sirup, maple sirup, etc., as the sweetening ingredient, it is not the *sugar* candy of paragraph 506, but some other kind of candy which may be embraced within the

catch-all enumeration of paragraph 506 for all confectionery not specially provided for.

To become candy, whether using sugar or other sweetener, the prepared ingredients are "molded or worked into various shapes or forms of a solid or semi-solid consistency."

Accepting, *arguendo*, Mr. Zeigler as a witness who was qualified to testify as to the uses to which Westco customers put the pastes, we have little doubt that the marzipan which confectioners processed by *molding and shaping* these sugar pastes becomes, in that molding and shaping process, sugar candy. That, however, was not the state in which the merchandise at bar was imported. It was not candy when imported, but paste packed in ten-pound tins. It is the condition of merchandise at the time of its importation which governs tariff classification. *United States* v. *P. John Hanrahan, Inc., et al.*, 45 CCPA 120, C.A.D. 684, among others.

As to the macaroon paste, the record is even stronger against the protest claim. Not only was this not candy when imported; it was, in large part, used by bakers in making non-candy products.

We need not rule whether, in its condition as imported, the merchandise at bar was some kind of confectionery that is not otherwise provided for in the tariff act, because we find that it is paste which is specially provided for, *eo nomine*, in paragraphs 756 and 761. While unnecessary to rely on the Summary of Tariff Information, 1929, or the Summaries of Tariff Information, 1948, cited by defendant in its brief, we do observe that comments therein support our finding that the merchandise at bar is paste for which Congress specially provided.

We have studied the precedents cited in the briefs that counsel have filed. They are not particularly helpful. As plaintiffs' brief points out, there seem to be no cases construing competition between the tariff provisions which are here in issue.

Those cases cited in which the collector's classification as candy (or other confectionery) was sustained, do not involve bulk merchandise shown to have been molded or shaped after importation for sale as candy.

In *A. A. Vantine & Co.* v. *United States*, 15 Treas. Dec. 45, T.D. 28698, a case decided in 1908 under the Tariff Act of 1897, the merchandise was shown to be sold as candy, in imported condition, in confectionery stores and confectionery departments. It was classified by the collector as candy, a classification which Vantine protested. There is no comparable showing as to sale of the imported ten-pound tins of paste at bar, as candy, in confectionery stores or departments.

In *United States* v. *W. C. Carlson*, 21 CCPA 565, T.D. 46990, the facts were stipulated. The imported merchandise was agreed by the

parties to be licorice flavored pastilles, stipulated to be confectionery and classified by the collector as such under paragraph 506, Tariff Act of 1930.

In *Scharf Bros. Co., Inc.* v. *United States*, 24 CCPA 111, T.D. 48414, the merchandise was licorice cakes, in chief value of licorice. The collector classified the cakes as confectionery. The issue raised by the protest was that the cakes were more specifically described in the tariff enumeration for extract of licorice. That claim was overruled.

In *Border Brokerage Company, Inc.* v. *United States*, 55 Cust. Ct. 143, C.D. 2564, the merchandise at bar was not a paste. There was no claim that it was. Chocolate "Mellos," sold *as imported*, were held to be confectionery, as classified by the collector, and not sweetened chocolate, as the protest claimed.

The protest claim is overruled.

Judgment will be entered accordingly.