**CHAS. PFIZER CO., Inc.**

**v.**

**UNITED STATES.**

**C.D. 3425; Protest Nos. 64/14338–5357.**

United States Customs Court,
Third Division.
April 24, 1968.

---

Brooks & Brooks, New York City (J. Joseph McDermott and Michael T. Crimmins, New York City, of counsel), for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Mollie Strum, New York City, trial atty.), for defendant.

Before RICHARDSON and LANDIS, Judges.

RICHARDSON, Judge:

The merchandise of these consolidated protests, described on the invoices as Orange Flavoured and Vanilla Flavoured "Limmits," was exported from Canada, entered at Niagara Falls, N. Y., and classified in liquidation as manufactured articles, not specially provided for, under 19 U.S.C.A., section 1001, paragraph 1558 (paragraph 1558, Tariff Act of 1930), and assessed for duty at the rate of 20 per centum ad valorem. It is claimed by the plaintiff-importer that the merchandise is dutiable under the provisions of 19 U.S.C.A., section 1001, paragraph 733 (paragraph 733, Tariff Act of 1930) as modified by T.D. 54108, as biscuits or similar baked articles, containing confectionery of any kind, at the duty rate of 8½ per centum ad valorem.

It is not disputed between the parties that the articles in question are composed in part of biscuits and that these biscuits have been baked. The issue centers around the nature and purposes of a certain filling in between two biscuits, forming the article into a sandwich-like cookie. Plaintiff argues that the filling is confectionery within the meaning of paragraph 733, while defendant argues that the composition of the filling takes the article from the scope of the word "confectionery."

Edward R. Lang, a graduate chemist and senior supervisor of the quality control department in plaintiff's Brooklyn plant, testified at the trial that he had supervised the testing of representative samples of the involved shipments of "Limmits" to assure their identity and potency. A sample of a domestic product which was said by counsel to be representative of the imported product was received in evidence as plaintiff's exhibit 1. The witness stated that after testing both the domestic article and the imported article, he concluded that there was no significant difference between the two products. The test results disclosed what the witness regarded as "comparability" between the two products with respect to vitamin components.

As to the method of manufacture of the domestic product Mr. Lang testified on direct examination as follows (R–14, 15):

Q. Have you seen merchandise like Plaintiff's Exhibit 1 produced?—A. I visited, spent several weeks in the Dayton, Ohio plant where the domestic production was produced.

Q. Can you describe what you saw in the Dayton plant?—A. Actually these cookies are made in two steps. The first step is making the biscuits themselves, the shells. These are made, cut out of a flat sheet with a roll. They are then baked. The baked cookies are stacked, and then they come down another conveyor belt, where a certain definite weight of cream is added to the cookie, and then continue further down this belt, and they are packaged into this type of a package.

Q. Where is the vitamin content provided?—A. The vitamins are in the cream filling, they are intermixed with the flavors, the sugar, the "cmc" that is in the cream.

And on cross-examination Mr. Lang testified (R–18, 19):

Q. Now, when the vitamin is placed in the mix is the mix baked or processed?—A. No, no, the mixed vitamins are placed in the cream mix. This is in no way baked. This is just— shall I call it a slurry? It has some fats in there, and that is in no way baked at all. The cookies, the shells

themselves are baked. As they come out of the oven they are stacked, and after they cool they are again placed on a belt—a moving belt, at which point a weighed quantity of the cream is placed on every other biscuit, then it makes a sandwich as they do that.

Q. In your opinion, is the important portion of the Limmits, the vitamin-mineral mix, which contained the important vitamins?—A. This is the part that we were controlling. The entire cookie, the mix, the dough and the vitamins make up the dietary, gives the balanced value we are trying to get into this. You see, you derive your protein from the cookie itself from the flour, types of flours that we used in there.

Q. Was this product intended for people who wish to lose weight?—A. This was its prime function, yes.

Q. Then the only baked portion of Limmits is the shell?—A. That is right.

Also in evidence are written interrogatories and cross-interrogatories propounded of one Donald J. Schmalz, product development manager for Christie Brown Co., developer of the involved merchandise for Pfizer of Canada. The interrogatories corroborate as to the imported product the two stage production method testified to by Mr. Lang with respect to the manufacture of the counterpart domestic article, that is, the biscuits are baked first, and then the filling is added.

As to the ingredients of the filling, Mr. Schmalz referring to the orange flavoured Limmits, stated:

These biscuits were iced with a filling made from the following formula:

Palm Kernel oil, 146 pounds
Pulverized sugar, 124 pounds
Powder A, 30 pounds
Powder B, 17 pounds, 10 ounces
Skim milk powder, 10 pounds, 8 ounces
Vitamin mixture, 12 ounces
Powder D, 1 pound, 12 ounces
Oil of orange flavour, 14 ounces
Orange colour, 9 ounces

Powder A, B and D, and the vitamin mixture were all supplied in weighed units by Pfizer of Canada. The finished biscuits with the icing consisting of two shells with icing between weighed 14 pieces per pound. * * *

In connection with the difference between the orange flavoured Limmits and the vanilla flavoured Limmits, Mr. Schmalz stated:

The only difference between the orange-flavoured Limmits and the vanilla-flavoured Limmits was with regard to the icing or the filling; not the shells. And this difference, and I make reference here to the formula, in the vanilla Limmits there was no colour added to the icing. Four ounces of vanillin flavour and four ounces of custard flavour.

In the orange Limmits there were nine ounces of orange colour and 14 ounces of oil of orange flavour. No vanillin or no custard flavour used in the orange-flavoured Limmits.

And Mr. Schmalz also stated:

Vanilla-flavoured Limmits utilize artificial flavours, and the orange-flavour Limmits utilize pure oil of orange, which is considered pure flavour as opposed to artificial.

The foregoing comprises the sum and substance of the evidence bearing on the nature of the filling in the involved Limmits.

The word "confection" is defined as follows:

confection n. * * * 2. A composition of different materials. * * * a *Pharm.* A composition of drugs; specif., a soft solid made by incorporating a medicinal substance or substances with sugar, sirup, or honey. * * * b a prepared dish or dainty; now, a preparation of fruits or roots, etc., with sugar; a sweet-meat; comfit; preserve. [Webster's New International Dictionary, 1930 edition.]

confection * * * II *n.* 1. Any mixing or compounding, or the article so produced (1) An article of confectionery; a sweet meat. [Funk &

Wagnalls New Standard Dictionary, 1920 edition.]

And the word "confectionery" is defined by these authorities as follows:

confectionery n. 1. Sweetmeats, in general; things prepared and sold by a confectioner; confections, candies. [Webster's, supra.]

confectionery n. 1. The sweetmeats collectively that a confectioner makes or sells, as candy or other articles made of sugar, sirup, honey, or the like. [Funk & Wagnalls, supra.]

■ Our appeals court has held that "icings" applied to or spread upon baked articles come within the broadened understanding of the word "confectionery" which tariff statutes allow. United States v. Meadows & Co., 5 Ct.Cust.Appls. 532, T.D. 35177. With respect to the fillings, or icings as they have been called, on the Limmits at bar, we are of the opinion that such icings are not like the "cheese" or "paste with celery flavor" which filled the baked halves of wafers in Renken & Yates Smith Corp. v. United States, 1 Cust.Ct. 309, C.D. 73, or the "cheddar cheese" which filled the baked halves of biscuits in Renken & Yates Smith Corp. v. United States, 22 CCPA 225, T.D. 47143.¡ We think that the icings here involved are like the "cream" made from vegetable fats (containing various essences according to flavor desired) which filled the baked halves of biscuits in United States v. Renken & Yates Smith Corp., 24 CCPA 265, T.D. 48687, wherein our appeals court, finding the cream filling not to lack sugar or other sweetening material, concluded that the filling was a "confectionery" within the meaning of paragraph 733 of the 1930 Act.

On the state of the instant record there can be no questioning of the fact here that sugar constitutes a substantial part of the formula by means of which the subject icings are produced—compounded, as it were, with various other ingredients. Mr. Schmalz, referring to the filling, stated that the "basic icing is sugar and fat plus minor ingredients."

(See answer to Eleventh Interrogatory.) And defendant has adduced no evidence to negate these facts and statement which appear of record.

■ Defendant's counsel calls attention to the fact that the main purpose of the Limmits is their use for weight reducing, in advancing the argument that a "confectionery" is generally a sweet which is consumed for its pleasurable taste. We observe, however, that paragraph 733 is not a use provision. Moreover, we are cited to no authority by counsel which supports the proposition that an article of food may not be regarded as being a "confectionery" if it is consumed for purposes other than its pleasurable taste. And our own research discloses precedent to the converse of such a proposition. See Scharf Brothers Co., Inc. v. United States, 25 CCPA 32, T.D. 49038, wherein the collector's classification of a white rock candy, containing 99.86 per centum of cane sugar or sucrose, as a "confectionery" was sustained as against the contention that the candy was a "medicinal preparation", upon a record showing some uses of the candy for medicinal purposes. Certainly, the aforementioned definitions reveal compatability of association of the words "confection" and "confectionery" with pharmacology, most obviously in the introduction of sweetening substances in the masking of unpleasant tastes or odors in medicines and medicinal preparations. And in the light of such identification, we can see no deterrent to the association of the words "confection" and "confectionery" with the preparation and use of foods for dietary use.

■ For the reasons stated and upon the evidence at bar we conclude that plaintiff has sustained its claim that the imported Limmits are biscuits containing confectionery within the meaning of paragraph 733. Consequently, the protests herein are sustained.

Judgment will be entered accordingly.

LANDIS, Judge, concurs.