(C.D. 4409)

LEAF BRANDS, INC. *v.* UNITED STATES

Court Nos. 69/3691, etc.

(Decided February 13, 1973)

*Schwartz & Lidstrom* (*Barnes, Richardson & Colburn* and *Joseph Schwartz* of counsel) for the plaintiff.

*Harlington Wood, Jr.*, Assistant Attorney General (*Steven P. Florsheim*, trial attorney), for the defendant.

MALETZ, Judge: The problem in this case is to determine the proper tariff classification of a product known as "Zing" that was exported from Japan in 1965 and 1966. The merchandise was assessed with duty at 20 percent ad valorem under item 182.91 of the tariff schedules as an edible preparation not specially provided for. Plaintiff claims that this assessment is erroneous and that the importation is properly dutiable at 14 percent ad valorem under item 157.10 as "confectionery". Defendant denies that the importation is confectionery and defends its classification, but claims alternatively that it is a flavored sugar dutiable at 20 percent ad valorem under item 155.75.

The pertinent provisions of the tariff schedules read as follows:

Assessed under:

> Schedule 1, Part 15
>
> \*   \*   \*   \*   \*   \*   \*
>
> Subpart B headnotes:
>
> 1. This subpart covers preparations fit for human consumption not provided for elsewhere in schedule 1.
>
> \*   \*   \*   \*   \*   \*   \*
>
> Edible preparations not specially provided for (including prepared meals individually packaged):
>
> \*   \*   \*   \*   \*   \*   \*

| 182.91 | Other _____ | 20% ad val. |
|---|---|---|

Claimed by plaintiff under:

> Schedule 1, Part 10
>
> \*   \*   \*   \*   \*   \*   \*
>
> Subpart C headnotes:
>
> \*   \*   \*   \*   \*   \*   \*
>
> 2. The term "confectionery", as used in this subpart, covers confections or sweetmeats ready for consumption. This subpart does not cover all confectionery (see subpart B of this part, part 9 of schedule 1, and subpart B of part 15 of schedule 1 for other provisions covering confectionery).

| 157.10 | Candy, and other confectionery, not specially provided for_____ | 14% ad val. |
|---|---|---|

Alternatively claimed by defendant under:

> Schedule 1, Part 10
>
> Subpart A headnotes:
>
> \*   \*   \*   \*   \*   \*   \*

| 155.75 | Sugar, sirups, and molasses, described in this subpart, flavored; and sirups, flavored or unflavored, consisting of blends of any of the products described in this subpart_____ | 20% ad val. |
|---|---|---|

The imported merchandise, as shown by the sample in evidence, consists of cartons containing plastic straws three and one-half inches long and plastic simulated soft-drink bottles approximately three and one-quarter inches high filled with variously colored powders (orange,

yellow, green, pink and lavender). The powder, according to a chemical analysis prepared by plaintiff, consists of 95.01 to 96.42 percent dextrose, plus citric acid, flavoring and coloring.[1]

The words "Leaf Zing Eat or Drink Powder Mix" are printed on the top and three sides of the cardboard container. The top cover shows a boy sipping through a straw in the Zing bottle. A band of paper encircling the middle of each bottle has the word "Zing" printed thereon and lists the flavor of the contents (i.e., grape, strawberry, pineapple, lemon-lime, or cherry). Also printed on the paper band are the ingredients and the name and location of the manufacturer.

The sole witness at the trial, the vice-president of plaintiff's research and development division, testified to the following effect: Plaintiff is a manufacturer of "bubble gum, confectionery, and freeze pops". The import in issue, Zing, consists primarily of dextrose to which flavoring, citric acid and food coloring have been added. It was developed and imported in order to compete with two popular products, having the same formula as Zing, that were sold in small "poppa and mamma" stores. One of these products, "Lik-M-Aid", consists of a small packet of powder which retailed for a penny per packet. The other product, "Pixy Stix", consists of a long straw that contains powder and is sealed tight at each end. According to the witness, Pixy Stix and Lik-M-Aid were rather popular "in the fact that a child came in, put down his penny, took * * * [the Pixy Stix] and * * * snipped off the end of the straw, put it in his mouth, [and] ate it, or, tore off the top of the little paper pouch [Lik-M-Aid], and poured it in [his mouth]."

The witness testified that he had tested Zing by taking the cap off the bottle, dipping the straw into the bottle and sucking the powder up through it. He found that it tasted sweet, although not as sweet as sucrose, and also tasted tart because of the citric acid. He further stated that "[i]t is pleasant and has a cooling effect on your tongue, which is characteristic of a dextrose product." The witness added that it is highly flavored and colored to match the flavor. "In other words, cherry is red; orange is orange; and yellow is lemon; etc."

The product was offered to the wholesale trade in selected sales territories through plaintiff's "candy brokers". It had a short-range success, but "didn't have much staying power" and therefore was subsequently abandoned.

The witness agreed that, chemically, dextrose is a sugar since it is a saccharate derived from corn. He stated, however, that it was not so

---

[1] This analysis, and another prepared for plaintiff, which showed a dextrose content of 94.6 percent, included the moisture content. An analysis prepared by the Customs Laboratory showed a dextrose content of 86.3 to 87.0 percent. This lower dextrose content resulted from use of a dry method of analysis in which the moisture content (8.9 to 9.4 percent) was first separated out.

69

known by "common usage" in view of the fact that "the general public thinks of sugar as cane sugar or beet sugar." He also testified that Zing is soluble in water and could produce a soft drink similar in taste to Kool-Aid, although twice as much Zing would be required because dextrose has less sweetening power than "sugar".

The witness explained that a small child buying an item like Lik-M-Aid or Zing at the local store would use it immediately without waiting to get a glass of water to mix it in a drink. In his opinion, Zing is candy or confectionery, although "chemically" it is "flavored sugar". The product, he stated, is similar to numerous items on the market which have exactly the same formula but are pressed into a pill "and there is no question it is candy because it is in a pill form." In fact, his company takes the Zing formulation, presses it and calls it "sour sweets".

At the outset, it should be noted that item 182.91—the provision under which the present import was classified—is limited to edible preparations "not specially provided for". Thus evidence that either item 157.10 or 155.75 is satisfied is "*ipso facto*" also evidence that item 182.91 "is not pertinent". *Venetianaire Corp. of America* v. *United States*, 60 CCPA 75, C.A.D. 1084 (1973) (slip op. at 4).

Against this background, plaintiff claims that Zing is "much more than" a flavored sugar as provided for in item 155.75; that it is a "powdered candy" which comes within the common meaning of "confectionery" as that term is used in item 157.10;[2] and that the only use shown for it is as a candy or confection. Plaintiff also contends that, even if Zing is a flavored sugar, the candy and confectionery provision—item 157.10—under which it claims is a designation by use which prevails over the *eo nomine* provision for flavored sugar in item 155.75.

Defendant, on the other hand, relies heavily upon the holding in *Westco Products, L. A.* v. *United States*, 58 Cust. Ct. 306, C.D. 2974 (1967), and particularly the statement at page 311 that—

> To become candy, whether using sugar or other sweetener, the prepared ingredients are "molded or worked into various shapes or forms of a solid or semi-solid consistency."

From this, defendant maintains that inasmuch as the merchandise in issue is a powder, it was not molded or worked into shapes or forms of a solid or semi-solid consistency and thus is neither candy nor confectionery, but a flavored sugar within the meaning of item 155.75. It also asserts that Zing is "more than" candy or confectionery because of its "suitability for use as a soft drink mix".

[2] The tariff schedules do not contain a statutory definition for "confectionery or candy". Subpart C, headnote 2 (which has been previously quoted) states only that the term "*confectionery*" as used in this subpart covers confections or sweetmeats ready for consumption and excludes confectionery provided for elsewhere.

The *Westco* case involved ten-pound tins of almond, nougat and macaroon pastes that were used chiefly by bakers and confectioners in making baked products and marzipan candy. The imported merchandise was classified as "almond paste" and "nut and kernel paste not specially provided for" under paragraphs 756 and 761, respectively, of the Tariff Act of 1930. Challenging this classification, the importer claimed that the merchandise was properly classifiable under paragraph 506 which covered "[s]ugar candy and all confectionery not specially provided for."

The court, citing a dictionary definition of "candy" (Webster's New International Dictionary, 2d edition (1956)) as a "food product * * * *molded or worked into various shapes or forms* of a solid or semi-solid consistency" [emphasis in original], found that the merchandise was not *candy* when imported, but paste, since it had not yet been molded or shaped. 58 Cust. Ct. at 310. The court explicitly found it unnecessary to "rule whether, in its condition as imported, the merchandise at bar was some kind of confectionery that is not otherwise provided for in the tariff act" because it found that the merchandise was specially provided for as almond paste (par. 756) and nut paste (par. 761). *Id* at 311. Thus, *Westco*, dealing as it did solely with the definition of "candy", is clearly not authority for defendant's position that the term "confectionery" does not include a substance in powder form.

Although various articles unquestionably are "confectionery", the exact scope of that term cannot be stated with certitude. Thus, the Tariff Commission observed in the *Tariff Classification Study (1960) Schedule 1*, page 164, that "[t]he term 'confectionery' is a rather elusive one, difficult to define," but added that there "seems to be agreement * * * that the term embraces confections or sweetmeats that are ready for consumption."

The term is defined in Webster's Third New International Dictionary (1961) as—

> confectionery n. 1:  sweet edibles (as candy, cake, pastry, candied fruits, ice cream):  things prepared and sold by a confectioner
> * * *

And it is defined in Funk & Wagnalls New Standard Dictionary (1942) as—

> confectionery 1. The sweetmeats collectively that a confectioner makes or sells, as candy or other articles made of sugar, sirup, honey, or the like. * * *

It is to be added that a wide variety of articles have been held to be "confectionery" within the meaning of the tariff statutes, including the following: Icings and creams used on, or as a filling in, biscuits, *United States* v. *Renken & Yates Smith Corp.*, 24 CCPA 265, T.D.

48687 (1936) ; *United States* v. *Meadows & Co.*, 5 Ct. Cust. Appls. 532, T.D. 35177 (1915) ; *Chas. Pfizer Co., Inc.* v. *United States*, 60 Cust. Ct. 460, C.D. 3425 (1968) ; "Pontefract cakes" containing licorice, sugar, flour, treacle, glucose, gelatine and caramel, *Scharf Bros. Co., Inc.* v. *United States*, 24 CCPA 111, T.D. 48414 (1936) ; pastilles containing extract of licorice, sugar and a binding agent, *United States* v. *W. C. Carlson*, 21 CCPA 565, T.D. 46990 (1934) ; hollow tubes of licorice candy made of cane sugar, glucose and licorice extract, which were attached to small balloons, *United States* v. *Andrews & Co.*, 12 Ct. Cust. Appls. 258, T.D. 40268 (1924) ; rock candy containing 99.86 percent sucrose, used by some persons as home remedies, *Scharf Brothers Co., Inc.* v. *United States*, 25 CCPA 32, T.D. 49038 (1937) ; chocolate products containing more than a "negligible" amount of nuts, *C. J. Van Houten & Zoon, Inc.* v. *United States*, 48 CCPA 116, C.A.D. 775 (1961) ; imitation fruits made of sugar, glucose, fruit pulp and various flavoring materials which "may be found in confectionery stores or departments, where * * * sold as candy; and * * * treated in the commercial world as confectionery", *A. A. Vantine & Co.* v. *United States*, 15 T.D. 45, T.D. 28698—G.A. 6706 (1908) ; and small oblong cakes made from millet seed, sesamum seed and sugar, and "used as a confectionery or sweetmeat solely", *U. Kobayshi* v. *United States*, 7 T.D. 197, T.D. 24992—G.A. 5577 (1904).

By contrast, in *Magdalani Bros.* v. *United States*, 55 T.D. 812, T.D. 43418 (1929), "halawi", a product made from sesame oil and sugar, which had the consistency of brown sugar and was eaten, as imported, on bread, was held to have been erroneously classified as confectionery under paragraph 505 of the Tariff Act of 1922. Concluding that the merchandise was dutiable as a nonenumerated manufactured article, the court stated (p. 813) :

> * * * Neither in its use nor appearance can it be construed to be confectionery, that term relating to a well-known class of sweetmeats or candies eaten as such without relation to any other commodity. The use of this importation is confined, so far as the record shows, to its use on bread, in the same way, probably as molasses, sirup, or apple butter would be used.[3]

It appears from the foregoing cases that the term "confectionery" applies to many kinds of sweet-tasting articles which are eaten as such for their taste and flavor without further preparation and which are usually sold in confectionery outlets. See e.g., *Magdalani Bros.* v. *United States*, *supra*, 55 T.D. 812; *A. A. Vantine & Co.* v. *United States*, *supra*, 15 T.D. 45; *U. Kobayshi* v. *United States*, *supra*, 7 T.D. 197. Thus, sweet, vanilla flavored lozenges having "some small thera-

---

[3] *Cf. United States* v. *La Manna*, 15 T.D. 280, T.D. 28862, 166 F. 751 (2d Cir. 1908), and *H. H. Geilfuss* v. *United States*, 6 T.D. 966, T.D. 24799—G.A. 5485 (1903).

peutic value", but "chiefly used as confections", and consumed largely for their taste, were held to be dutiable as "confectionery" under paragraph 212, Tariff Act of 1897. *S. Mandelbaum & Co.* v. *United States*, 8 T.D. 386, 387, T.D. 25647—G.A. 5806 (1904).

From what has been said, it follows that a criterion for classification of an article as confectionery is its use (which may be evidenced by its manner of sale) as a confection, rather than its shape and texture, as defendant claims.[4] Therefore, while a sweet edible product in powder form is not precluded, on that ground alone, from classification under item 157.10, it must be shown that it is chiefly used as confectionery.

It is true that the testimony of plaintiff's witness on this point is quite meagre. For apart from his testimony that Zing was sold in neighborhood candy stores (which, it is well known, sell many items in addition to candy and confectionery),[5] there are only his statements as to how he sampled the merchandise, and his opinion that it is a candy which a young child would eat immediately upon purchase at the local candy store rather than wait until he could get some water to mix it into a drink. However, in addition to this testimony, samples of the merchandise are before the court, and in a case of this nature, samples are very potent witnesses. *United States* v. *The Halle Bros. Co.*, 20 CCPA 219, T.D. 45995 (1932). What the court said in *Wilson's Customs Clearance, Inc.* v. *United States*, 59 Cust. Ct. 36, 40, C.D. 3061 (1967), with respect to the importance of samples in toy classification cases is equally applicable here:

> Nevertheless, as is especially true in toy cases, the sample merchandise can offer potent evidence on the question of use, and when in harmony with the other evidence of record, can permit the drawing of inferences as to use nationally. *Fred Bronner Corp.* * * * [57 Cust. Ct. 428, C.D. 2832]. There is precedent under the two previous tariff acts for viewing sample evidence as sufficiently persuasive to rebut the presumption of correctness on a toy classification and to shift the burden to the defendant, *United States* v. *The Halle Bros. Co.*, 20 CCPA 219, T.D. 45995; *United States* v. *Borgfeldt & Co.*, 13 Ct. Cust. Appls. 620, T.D. 41461.

And, as the appellate court pointed out in another toy case, "the probative effect of the sample imports, themselves, is such as to not only prove the original classification to have been erroneous, but also to provide a sufficient basis to establish the propriety of the asserted classification." *United States* v. *New York Merchandise Co.*, 58 CCPA 53, 59, C.A.D. 1004 (1970). See also e.g., *New York Merchandise Co.*,

---

[4] Defendant apparently concedes in its brief that the same article in tablet or lozenge form "might be candy or confectionery", but argues that it does not become either "at least until it is molded into the form of tablets or lozenges." (Br. p. 5, n. 2.)

[5] "[I]t does not follow that everything sold in a confectioner's shop is confectionery." *United States* v. *Takakuwa*, 10 T.D. 338, 339, T.D. 26736 (D.C. Hawaii 1905).

*Inc.* v. *United States*, 62 Cust. Ct. 38, 41, C.D. 3671, 294 F. Supp. 971, 974 (1969).

In this setting, examination of the entire sample by the court, which included tasting the powder in the manner indicated by sipping it through the straw, leads to the conclusion that the powder is eaten as a confectionery. The short straws, obviously designed for use with the plastic bottles, are used to sip up the flavored powder in a manner similar to drinking through a straw. This explains the language on the box "eat or drink powder mix". As viewed by a child, for whom the imported product is obviously intended, he is eating – or drinking – the powder much in the fashion of a soft drink.

It is correct that Zing can be mixed with water to make a beverage similar to Kool-Aid (albeit not as sweet). However, the Zing bottles, unlike the packages or containers of Kool-Aid and other soft-drink mixes, in no wise indicate that Zing is suitable for such use and have no instructions as to what proportions of powder and water should be used to make a palatable drink.

Thus, while the testimony as to actual use is very limited, the sample itself compels a finding that the merchandise is primarily used as a confectionery and that its use as a beverage mix would be at best incidental or exceptional. Further, "[a]dequacy, adaptability or susceptibility for [such] use has very little, if any, probative value." *Bob Stone Cordage Co.* v. *United States*, 51 CCPA 60, 67, C.A.D. 838 (1964).

Nor do we agree with defendant's assertion that the district director found as a "subsidiary fact" that Zing was "more than" candy or confectionery because of its additional "suitability for use as a soft-drink mix." There is nothing in the record or entry papers accompanying the present protests which reveals the director's reason for classifying the merchandise as he did. What is more, his classification of Zing as an edible preparation not specially provided for carries with it only the underlying finding that it is none of the edible preparations provided for elsewhere in the tariff schedules.

In short, the character and design of the samples in this case are such as to lead to the conclusion, in the absence of evidence of another use, that the powder is chiefly used to be eaten as a confectionery. Also, it may fairly be inferred that this usage is not limited to local conditions but would be substantially the same everywhere. *Wilson's Customs Clearance, Inc.* v. *United States*, *supra*, 59 Cust. Ct. at 40; *Fred Bronner Corp.* v. *United States*, 57 Cust. Ct. 428, C.D. 2832 (1966); *Imported Merchandise Company* v. *United States*, 52 Cust. Ct. 313, Abstract 68437 (1964); *A. N. Deringer, Inc.* v. *United States*, 48 Cust. Ct. 138, C.D. 2326 (1962). See also *Theo. H. Davies & Co., Ltd.* v. *United States*, 70 Cust. Ct. 5, C.D. 4399 (1973).

General Interpretative Rule 10(e)(i) provides that—

> (e) in the absence of special language or context which otherwise requires—
> (i) a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of articles of that class or kind to which the imported articles belong, and the controlling use is the chief use, i.e., the use which exceeds all other uses (if any) combined;

To sum up, the samples herein, together with the testimony of record, are of sufficient evidentiary value to rebut the presumption of correctness attaching to the classification herein and to meet the requirements of rule 10(e)(i). See e.g., *United States* v. *New York Merchandise Co., supra*, 58 CCPA at 59. Consequently, the evidence of record is sufficient to establish a *prima facie* case for plaintiff so as to shift the burden of going forward to defendant, *United States* v. *Abercrombie & Fitch Co.*, 20 CCPA 267, T.D. 46060 (1932), which has offered no proof in rebuttal to support its classification.

The remaining issue is whether the present record supports defendant's alternative claim [6] that the merchandise is properly classifiable as flavored sugar under item 155.75 which, it asserts, is "narrower in scope and more difficult to satisfy" than the confectionery provision of item 157.10, and thus more specifically describes the present merchandise. See General Interpretative Rule 10(c).

Whether item 155.75 is narrower in scope than item 157.10 need not be reached since the court finds that the merchandise in issue is more than flavored sugar. It is sugar plus citric acid plus fruit flavor plus coloring which have been combined to produce a confectionery product in powder form. The fact that "chemically" Zing may be a "flavored sugar", as the witness acknowledged on cross-examination, does not make it any less a confectionery; indeed, it is well known that many candies and other confectioneries, such as the rock candy involved in *Scharf Brothers Co., Inc.* v. *United States, supra*, 25 CCPA 32, are composed almost wholly of sugar.

Moreover, merely because a confection contains an ingredient *eo nomine* provided for in the tariff schedules does not warrant its classification thereunder. *United States* v. *W. C. Carlson, supra*, 21 CCPA 565. There is no showing, and we are unable to find from its legislative history, that Congress intended to include within the provisions of item 155.75 an article used as confectionery, although composed largely

---

[6] Absent the presumption of correctness with respect to the classification of the imported merchandise, defendant has the burden of establishing the correctness of its alternative claim. E.g., *James G. Wiley Co.* v. *United States*, 62 Cust. Ct. 257, C.D. 3738, 296 F. Supp. 955 (1969).

or in chief value of flavored sugar. *Scharf Bros. Co., Inc.* v. *United States, supra,* 24 CCPA 111; *United States* v. *Andrews & Co., supra,* 12 Ct. Cust. Appls. 258. Since the merchandise in issue comes within the tariff provision for "confectionery", its composition, from a chemical standpoint, is immaterial. See *Hummel Chemical Co.* v. *United States,* 29 CCPA 178, C.A.D. 189 (1941).

For the foregoing reasons, plaintiff's claim that the imported merchandise is properly assessable at the rate of 14 percent under item 157.10 as confectionery is sustained. Judgment will be entered accordingly.